---

(No. 14624.—Reversed and remanded.)
ANNA RUSH *et al.* Appellants, *vs.* THEODORE C. RUSH, Appellee.

*Opinion filed October 21, 1922.*

1. EVIDENCE—*when declarations are admissible to establish title of declarant.* While statements of a party cannot be admitted in evidence to establish a right or title of the declarant, or one claiming through him, when the right is disputed by litigation, there are circumstances under which such declarations are admissible, as where the statements were made at different times while the declarant was in possession and are explanatory of his possession and control of the land, or where they were made in the presence of the adverse party through whom the parties objecting to the evidence claim title.

2. TRUSTS—*resulting trust must be established by clear and unequivocal evidence.* One claiming the benefit of a resulting trust must establish it by proof which is clear, strong, unequivocal and beyond doubt, and a resulting trust, from the alleged purchase of land by a husband with his wife's money, is not established where the evidence is not clear as to where the money came from and where the transaction took place more than fifty years ago and the

memory of the witnesses is not clear as to the circumstances and conversations.

3. SAME—*a resulting trust arises out of a presumed intention—partition.* A resulting trust does not arise out of an agreement but out of a presumed intention, and where it is sought to establish a resulting trust in a partition suit, evidence which would not support a resulting trust but rather an express trust, which would be barred by the Statute of Frauds, cannot be relied upon.

APPEAL from the Circuit Court of Champaign county; the Hon. FRANKLIN H. BOGGS, Judge, presiding.

HARRY B. BOYER, for appellants.

JOSEPH P. GULICK, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

A bill for the partition of 180 acres of Champaign county land was filed during November, 1920, in the circuit court of that county, by the widow, two nephews and a niece of David Rush, who died intestate in October, 1919, having the record title to said acreage, and leaving complainants, who are appellants here, and Theodore C. Rush, a nephew, the appellee, as his only heirs-at-law. The parties to the litigation were all of age and entered their appearances. Appellee, who has been a resident of Kansas for many years, was a nephew and also a step-son of Rush, the latter having married Abigail Rush, the widow of his deceased brother, about the year 1865. Appellee answered the bill and filed a cross-bill. The pleadings are rather long, were amended several times, and most all of them were either demurred to or excepted to. The last amendments to the pleadings were made by leave after the cause was originally referred to the master and the order of reference set aside. There was no controversy as to who were the heirs of decedent nor as to the distribution of the land, except as to one 40-acre tract, being the southeast quarter of the northwest quarter of section 28, township 21, north,

range 8, east of the third principal meridian. By appellee's cross-bill and his answer to the original bill he alleged his mother, Abigail, wife of David Rush, delivered to her husband $587 to buy land for appellee; that Rush bought the 40 acres with that money but took the title in his own name; that he held it in trust for appellee, who was and is the equitable owner of said tract. Appellants set up the Statute of Frauds, limitations and *laches* by exceptions, demurrers and answer, and appellee amended his answer and cross-bill. As finally amended the pleadings of appellee set up a resulting trust in his favor, claiming the 40-acre tract was bought with funds belonging to his mother, Abigail, the first wife of deceased; that deceased took the legal title in his own name but held the land in trust for Abigail, and that upon her death appellee became entitled to it as her only heir. Appellants set up and relied upon the Statute of Frauds, *laches* and the twenty-year and seven-year Statutes of Limitations. The chancellor by his rulings excluded entirely the issue of *laches*. The cause was again referred to the master in chancery to take the proof and report his conclusions. The master reported finding the equities in favor of appellee, and recommended a decree as prayed for in the cross-bill and a dismissal of the original bill of complainants. Objections to the report were overruled by the master and made exceptions before the chancellor, who overruled the same but granted the relief prayed in the original bill except as to the 40 acres here in controversy, the title to which was decreed to be in appellee. An appeal was perfected by the complainants to this court.

The evidence produced on the hearing shows David Rush lived in Ohio. After serving through the civil war he returned to his home there and in 1865 married Abigail Rush, the widow of his deceased brother, George. Theodore Rush, appellee, was the son of George and Abigail Rush, and as a child continued to live in the home of his mother and step-father, David Rush. The 40-acre tract

involved here was purchased by Rush from the trustees' of the Illinois Central Railroad Company in May, 1866. The deed properly describes the land, designates the consideration to be $360, and names the grantee as "David Rush, of the State of Ohio." Deceased, his wife and appellee moved to Illinois and occupied the land whereon the buildings were placed from 1866 to 1900, when Rush and wife moved to Champaign, Illinois. Abigail died there intestate in 1906, leaving surviving her son, the appellee, as her sole and only heir. In 1908 Rush married Anna Rush, who had been a domestic servant in the Rush household since the year 1882. He died without issue in 1919, leaving his widow, Anna, the other appellants here, and appellee, as his only heirs. At the time of his death he was seized and possessed of approximately 180 acres of land in Champaign county, only 40 of which, termed the home 40, is here involved. It was stipulated that during his lifetime Rush paid all the taxes, collected and used all the rents, issues and profits of the land from the time of its purchase till his death.

The testimony of all the witnesses for appellee, who himself had resided in Kansas for many years, was taken by depositions. James H. Carpenter, of Larned, Kansas, testified for appellee that he was ninety years old and had lived in Kansas for about forty years; that he once lived in Champaign county and was nearest neighbor to David Rush; that Rush built a barn for witness in 1867 or 1868, and while there he told witness he homesteaded 40 acres, and his wife gave him the money to buy that; that he bought another 40 from the Illinois Central Railroad Company on time; that he got nearly $600 from his wife. Witness did not think Rush said where his wife got the money, but she gave him the money when he bought the place.

Augusta Wheaton testified for appellee that she was eighty-eight years old and an aunt of appellee by marriage; that she knew David Rush and appellee's mother when they

304—36

lived in Ohio; that she knew Rush went to the civil war and thought he was in the army the full time; that he came to Illinois first to build a house for witness, then went back to Ohio and brought appellee and his mother to Illinois; that they stayed at witness' house till Rush built a house for himself on his own land; that she thought Rush bought the land the first time he was out to Illinois; that she did not know where he got the money to buy it and never heard the question of where the money came from that bought this land discussed by the family; that she thought Abigail Rush disposed of her Ohio home before she came to Illinois; that the father of appellee's mother left some property when he died and this property went to his children, but witness did not know how much each received.

James Collins testified he was thirty-three years old; that he knew appellee intimately and had been at his place a number of times; that he met David Rush there; that when witness was eighteen years old he heard a conversation during the fall of 1907 between appellee and Rush while the latter was on a visit to appellee, about buying some land in Kansas; that Rush said, "Ann and I are going to get married and would like to come and live in this western country;" that appellee asked Rush, "Did you ever have your will fixed?" and Rush answered: "Theddy, that will is taken care of and you have been looked out for; * * * the money that your mother, the proceeds of the land that your mother's money bought, goes to Ann up to her death and the land all comes to you."

Jessie Rush Ebert, daughter of appellee, testified she was forty-one years old and lived at David Rush's farm home near Champaign during part of the summer of the Chicago fair, in 1893; that she heard a conversation there between her grandmother and grandfather; that the former said, "David Rush, you promised me fair and square that you would turn this land over to Thede Rush," and he

said, "What more do you want?" and she replied, "Well, I want it in black and white, so that I will know when I am dead and gone that this land will be Thede Rush's and not Wilse Rush's, for it was my money that has made you what you are to-day, for you did not have only what you had on your back when I married you." Witness said this was all the conversation; that her grandmother did not say where she got the money nor when she gave it to him.

J. C. Hopper testified in behalf of appellee that he was fifty-eight years old and an investment banker; that he had known appellee intimately for thirty-five years; that he met David Rush at a bank in Ness City, Kansas, in 1905; that he and Rush were talking of early days in Kansas and Illinois and exchanging experiences; that Rush said he drove to Illinois and had no money when he got there and that he bought 40 acres of land with money furnished by his wife; that Rush said he had no children and that some day Theodore would be well fixed.

Two other witnesses testified for the appellee relative to David Rush having made a will some twenty or thirty years ago, whereby some property was left to a young lady living with him and other property was given to appellee and others. There was nothing very positive or definite about their testimony and neither knew what became of the will.

This was all the evidence offered on behalf of the appellee to sustain his cross-bill and to establish the claim of a resulting trust in his favor.

Appellants offered several witnesses in their behalf, some of whom were long-time acquaintances and some former tenants on the Rush land. They testified as to statements made by Rush in his lifetime that he bought the 40 acres in question with his own money that he saved up while in the army. One of these witnesses had such a conversation with Rush in the presence of his first wife, who said nothing to the contrary. It was shown Rush made all the improvements and repairs, the buildings being located on the

40 acres in controversy; that he kept the buildings insured and paid all the taxes on the land. Another witness testified that the leases to the land were made in the name of Rush. This testimony was objected to as incompetent, being self-serving statements. While it is the general rule that statements of a party cannot be admitted in evidence to establish a right or title of the declarant, or one claiming through him, when that right is being disputed by litigation, there are circumstances under which such declarations are admissible. This was made clear in *Knight* v. *Knight,* 178 Ill. 553. (See, also, 10 R. C. L. sec. 166, p. 984.) The statements proved were made at different times during the fifty-three years Rush had title, possession and control of the land. Some, at least, of them were made in the presence of Abigail Rush, and it does not appear that his ownership had then been questioned. The evidence was competent.

We will base our decision on a consideration of the sufficiency of the evidence to establish a resulting trust. There are legal questions which present serious obstacles to appellee's claim, but in our view of the case it will be unnecessary to determine whether they are fatal to a recovery. The law is well settled that one claiming the benefit of a resulting trust must establish it by proof clear, strong, unequivocal and beyond doubt. (*Hill* v. *Berger,* 302 Ill. 312; *Baughman* v. *Baughman,* 283 id. 55.) The reasons for this rule were stated in *Orear* v. *Farmers' State Bank,* 286 Ill. 454, as follows: "The policy of the law requires that everything which may affect title to real estate shall be in writing; that nothing shall be left to the frailty of human memory or as a temptation to perjury, and wherever this policy of the law has been broken in upon and parol evidence admitted, the courts have been ever careful to examine into every circumstance which may affect the probability of the alleged claim,—as the lapse of time, the means of knowledge and circumstances of the witnesses,—and will

not grant the relief sought where the claim has been allowed to lie dormant for an unreasonable length of time or where the evidence is not very clear in support of the alleged right, especially where no claim has been set up during the lifetime of the trustee but is raked up and charged against the heirs, who may not be supposed to know anything about it or be able to defend it as their ancestor might have done."

What we have above quoted is applicable to this case. A brief analysis of the testimony shows the proof in this case falls short of the requirements. Carpenter testified Rush told him his wife gave him the money when he bought the land. Mrs. Wheaton stated she did not know where Rush got the money or where the money came from that bought the land, but that he bought it on his first trip to Illinois and then went back to Ohio to get his wife and her child. Collins says Rush told appellee he had made a will and that Anna Rush was to get the benefit of the land during her lifetime and the land to then come to appellee. Appellee's daughter states a conversation between her grandparents which would not support a resulting trust but rather an express trust, which would be barred by the Statute of Frauds. A resulting trust does not arise out of an agreement but out of a presumed intention. The investment banker's conversation is one which happened while Rush was on a visit to appellee in Kansas and is in direct conflict with other circumstances surrounding the case. In our opinion appellee did not establish by clear evidence that his mother furnished Rush the money he paid for the land. Further, the proof does not establish that if she did furnish him the money she did not intend for him to use it in the purchase of land in his own name but for the purpose of purchasing land and taking the title in her name. By his pleadings the appellee abandons his first position, that his mother furnished the money to buy the land for him. He admits Rush said after the death of appellee's mother that he had willed the 40 acres to Anna Rush for life and at

her death it would go to appellee. Such a statement could only be consistent with a claim of ownership and inconsistent with the existence of any trust.

For the reasons stated the decree of the circuit court is reversed and the cause remanded, with directions to dismiss appellee's cross-bill and grant the relief prayed in the original bill.    *Reversed and remanded, with directions.*

---

(No. 14797.—Judgment reversed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
MORTON T. CULVER, Appellant.

*Opinion filed October 21, 1922.*