(No. 20216.—

ISAAC L. GREGORY *et al.* Plaintiffs in Error, *vs.* JOSEPH GREGORY *et al.* Defendants in Error.

*Opinion filed April 23, 1931.*

S. H. CUMMINS, for plaintiffs in error.

WHITLEY & FITZGERALD, and REDMON & REDMON, for defendants in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The circuit court of Macon county entered a decree dismissing for want of equity the amended bill of plaintiffs in error to declare and enforce a trust on 204 acres of real

estate in that county and for partition thereof. This writ of error has been sued out for a review of the record.

On August 28, 1928, plaintiffs in error, (herein called complainants,) Isaac L. Gregory, Susie Summers, Sarah Strawn, Annie Nolte, Ruth Wells, Hazel King, Billie Neswald, Mary Gregory, Samuel Gregory, Everett Gregory, Isaac Gregory and Ralph Gregory, filed a bill in the circuit court of Macon county in which they alleged that on August 16, 1895, Isaac Gregory, Sr., was the owner in fee simple of the following described real estate: Commencing at the northeast corner of section 11, township 14 north, range 1 east of the third principal meridian, running thence west 320 rods to the northwest corner of section 11, thence south 102 rods, thence east 320 rods to the section line, and thence north 102 rods to the place of beginning, containing 204 acres, located in Macon county, Illinois; that Isaac died intestate on or about May 25, 1925, leaving surviving him two sons, Isaac L. and Joseph, and the widow and children of a deceased son, Thomas M., who died in May, 1917, leaving surviving him his widow, Mary, and the other eleven complainants aforesaid except Isaac L., as his children and heirs; that on August 16, 1895, Isaac and his wife executed a warranty deed conveying to Joseph the real estate aforesaid; that at the time the deed was executed the grantor reposed in the grantee the utmost confidence and trust; that the grantee, who was at that time about twenty-two years of age, persuaded the grantor to execute the deed through false representations and persuasion; that while the deed purported to be executed for a consideration of $14,000, Joseph paid his father nothing whatever for the property conveyed; that since August 16, 1895, Joseph has collected all the rents, issues and profits from the land; that there has been no administration upon the estate of Isaac; that soon after the death of Isaac, Joseph represented to complainants that he would distribute the property of the decedent as soon as such distribution

was expedient; that complainants relied upon said representations and were thereby induced to bring no proceedings to protect their interests; that they have since the death of Isaac applied to Joseph for an accounting of the rents, issues and profits of the real estate above described but that he has refused to account to them therefor; and that Isaac L. and Joseph are each entitled to a one-third interest in the land and the children of Thomas M., deceased, are each entitled to a one-thirtieth part of the land, subject to the dower interest of Mary, widow of Thomas M. Joseph Gregory, the National Bank of Decatur and the Prudential Insurance Company of America were made parties defendant. The prayer of the bill is that the deed from Isaac to Joseph may be set aside, that Joseph be required to account for the rents and profits of the land since the execution of the deed, and that partition of the real estate and general relief may be granted.

To the bill the Prudential Insurance Company filed an answer, the contents of which need not be noted, since before the final decree was entered the case was dismissed as to said defendant. Joseph Gregory and the National Bank of Decatur filed a demurrer to the bill. Complainants obtained leave of court to amend the original bill. In the bill as amended the allegation of the original bill that the deed from Isaac Gregory, Sr., to Joseph Gregory was obtained by Joseph through undue influence upon his father was omitted. In the amended bill it was further alleged that Isaac was born in Pennsylvania in 1834 and was first married in Sangamon county, Illinois, to Susan Ray in 1856, and that there were born of the marriage four children, Samuel and Albert, both of whom died in infancy, and Isaac L. and Thomas M., twins; that Susan died, and thereafter Isaac married Delia V. Moore and moved to Macon county, Illinois, where two children were born of the marriage, Fannie, who died in infancy, and Joseph. The death and heirship of Thomas M. were alleged as in the original

bill. It was also alleged in the amended bill that the deed from Isaac to Joseph was executed on August 16, 1895, while Isaac was living in Macon county with his son Joseph; that the deed was filed for record and recorded in the deed records of Macon county on August 16, 1895; that at the time the deed was executed Joseph was about twenty-one years of age and had no money or property with which to buy the land and that no consideration passed from Joseph to his father for the execution of the deed; that at the time the deed was delivered to Joseph he signed an agreement in writing with his father, the exact language of which is unknown to complainants, but the substance of the agreement was that Joseph was to hold the land conveyed to him in trust for the use and benefit of Isaac during his lifetime and at the death of his father Joseph was to convey to Isaac L. and Thomas M. a one-third interest, each, in the land; that it was the desire of Isaac and Joseph to keep the agreement secret and therefore it was not recorded; that Isaac lived upon the land and had the use and benefit thereof until his death, in May, 1925; that complainants after the death of Isaac applied to Joseph to carry out the trust agreement, and he represented to complainants that the trust agreement had been lost or destroyed and that he would settle with them as soon as expedient; that afterward Joseph reported to complainants that he had destroyed all the papers relating to the land and certain promissory notes which he claimed he had given to his father, and that he had collected all the rents and income from the property since the death of his father and appropriated the same to his own use and benefit. The prayer of the amended bill is that Joseph may be required to produce the trust agreement signed by him, and that in case he failed to do so or to account for the loss or destruction thereof the agreement may be restored by the court and that complainants may be declared to be the owners of the prop-

erty as tenants in common with Joseph and for partition and for general relief.

To the bill as amended defendants filed an answer, in which they admitted that the deed from Isaac Gregory, Sr., to Joseph Gregory was executed as alleged in the bill but denied that Joseph executed a trust agreement, or any agreement by which he agreed to hold the land in trust or for the use and benefit of any person except himself. They alleged that Joseph was the owner of the premises, and that no person other than he had any interest whatsoever in the land except such persons as had a mortgage or mortgages thereon. Complainants filed a replication to the answer, and the cause was referred to the master in chancery to take the proofs and submit his conclusions of law and fact.

After some of the evidence in the case had been taken before the master in chancery, complainants by leave of court further amended their bill. By the second amendment they alleged that after the execution of the trust agreement alleged in the first amended bill Joseph Gregory further manifested the trust in writing in the form of two letters written and signed by him, which are set out in full in the amendment. One of these letters is dated March 27, 1928, and addressed to Isaac L. Gregory at Springfield, Illinois. The other is dated February 20, 1928, and addressed to M. W. Summers at Springfield. To the bill as secondly amended Joseph and the National Bank of Decatur filed an answer, in which they denied that no consideration was paid by Joseph to his father for the conveyance to him of the real estate and alleged that he paid a good and valuable consideration for the premises. They denied that Joseph executed a written agreement agreeing to hold the premises in trust for the use and benefit of the grantor during his lifetime and at his death to convey a one-third interest therein to each of his two brothers, Isaac L. and Thomas. They alleged that Joseph collected all the rents and profits from the land from the time of the execution of the deed

to him therefor, and alleged that he paid all taxes on the land from that time, paid off a mortgage thereon and at all times claimed the premises as his own. They denied that complainants had any interest in the land and denied that Joseph ever wrote or signed the letter of March 27, 1928, set out in the amended bill and addressed to Isaac L. They admitted that the letter of February 20, 1928, to Summers was written and signed by Joseph. The answer set out that the National Bank of Decatur held two mortgages on the premises, one dated March 17, 1927, securing an indebtedness of $30,000, the other dated June 7, 1928, securing an indebtedness of $15,400, and that both of the mortgages were executed by Joseph.

The master reported the evidence and his conclusion of law that the bill should be dismissed for want of equity. Objections to the master's report were overruled and by agreement the objections were allowed to stand before the chancellor as exceptions to such report. The chancellor overruled the exceptions and entered a decree dismissing the amended bill for want of equity.

The undisputed evidence in the case establishes the following facts: On August 16, 1895, Isaac Gregory, Sr., and his wife, Delia V., executed a warranty deed conveying to Joseph Gregory the 204 acres of land described in the original and amended bills for a purported consideration of $14,280. The deed was duly acknowledged and was on August 16, 1895, filed for record in the recorder's office of Macon county and there recorded. The deed recited that it was "given subject to two mortgages amounting to $4100 now on the above premises and the said Joseph Gregory assumes the payment of same at their maturity." At the time the deed was executed Joseph was about twenty-one years of age and was living with his father. Since the execution of the deed Joseph has had possession and the use of the premises thereby conveyed. On May 5, 1893, Isaac had executed a mortgage on the premises conveyed

by the deed to secure the payment of $3100 which he owed to the Northwestern Mutual Life Insurance Company, and on January 16, 1895, had executed another mortgage on the premises to J. M. Brownback to secure payment of $1000 and interest. The first of these mortgages was released of record by a release dated May 5, 1898, and recorded May 12, 1898, and the second by a release dated May 9, 1898. On April 23, 1898, Joseph and his wife executed a mortgage on the premises to the Connecticut Mutual Life Insurance Company to secure the payment of $5500, and this mortgage was subsequently released of record. From the time of the execution of the deed and until his death Isaac lived with Joseph. Isaac died on May 15, 1925, at a hospital in Springfield. His heirship is shown to be as alleged in the original and amended bills. After the death of Isaac, and before the original bill in this case was filed, Joseph and his wife executed two mortgages on the premises in question and other land to the National Bank of Decatur, one to secure the payment of $30,000 and the other to secure the payment of $15,400.

Complainants introduced, over the objection of Joseph Gregory and the National Bank of Decatur, evidence of statements made by Isaac Gregory, Sr., after the execution of the deed. This evidence is found in the testimony of the following named witnesses, whose testimony is here given in substance and following their names:

Henry Knowles: He is a cousin of Isaac Gregory, Sr. After the deed was made he was accustomed to tease Isaac about not having any farm, and he would reply that he could get the farm any time he wanted it and would say he had it "fixed" that way. In a conversation with Isaac shortly before his death he stated that his "papers" had disappeared and he did not know what had become of them.

Isaac L. Gregory: About ten years after the deed to Joseph Gregory was executed, his father, Isaac Gregory, Sr., told witness that he had papers showing that Joseph "held

the farm in trust." About two years later his father told him that the papers had disappeared and that he did not know when or how they disappeared.

Rose Gregory: She is a daughter of Isaac L. Gregory. Isaac Gregory, Sr., was visiting at her father's home a few days before his death. During that time she heard a conversation between him and witness' mother, Sarah Gregory, in which he said, "Sarah, when I was sick Delia and Joe got away with my papers." He referred to his wife, Delia, and Joseph Gregory.

The evidence for complainants shows that after the death of Isaac Gregory, Sr., Isaac L. Gregory and others urged Joseph Gregory to make a settlement of their father's estate with the other heirs. Testimony to that effect was given by the following named witnesses, whose testimony is here given in substance and following their names:

Isaac L. Gregory: On the day of his father's funeral Joseph Gregory told him that "he would play fair." He later saw Joseph in Moweaqua, where Joseph lived, and asked him what provision their father had made about his estate. He replied that his father had made no provision about his estate. He then stated to witness that if he owed him anything he would pay him. He urged witness to keep the matter out of the courts and said to witness that he would have "no show in Decatur in court." Later, with R. G. Patton, witness went to Decatur and met Joseph at the office of his attorneys. Patton there told Joseph that they had come for a settlement. Most of the talking was done by Patton and Joseph's attorneys. Joseph there said that it had cost a great deal to keep his father in his lifetime and that he (Joseph) did not owe witness anything. Patton asked Joseph about his father's "papers," and he said that he had destroyed them, and then, when prompted by his attorneys, said that he had destroyed them with his father's consent. He did not say what paper or papers he had destroyed.

Christopher T. Sundley: He went to Moweaqua in March, 1928, with Isaac L. Gregory to see Joseph Gregory. At Moweaqua Joseph told Isaac L. to get his lawyer, and that if he (Joseph) owed him anything he would pay it. Joseph urged Isaac L. to keep the matter out of the courts.

M. W. Summers: He is the husband of a daughter of Thomas Gregory. He saw Joseph Gregory in Moweaqua and urged him to make a settlement with his brother Isaac L., and that Joseph replied that he did not consider that he owed Isaac L. anything.

R. G. Patton: He went to Decatur with Isaac L. Gregory and met Joseph Gregory at the office of his attorney. Witness told Joseph that he thought he (Joseph) should give Isaac L. a "statement of what money there was left of your father's estate." Joseph at first said he was tired of being hounded by lawyers and that he was going to make a settlement with Isaac L. if left alone but if he was not left alone Isaac L. would not get anything. Joseph stated that his father owed him "for his keep and taking care of him." He also stated that he had given his father a note which later he (Joseph) destroyed. He was then prompted by his attorney and then stated that he destroyed the note at the suggestion of his father.

A letter from Joseph Gregory to M. W. Summers, written at Moweaqua on February 20, 1928, was introduced in evidence, and the following is the body of the letter: "As I told you I would write or call you I will try to make my word good. I will meet you and Ike and your attorney, or anyone you care to bring along, at Whitley & Fitzgerald law office any time you name, in Decatur."

Rose Gregory further testified that she handled all the correspondence with Joseph for her father, Isaac L. Gregory; that one letter received by her father from Joseph was given by her father to Summers and his wife but witness kept a copy of it. Summers further testified that Isaac L. gave the letter referred to in the testimony of Rose to his

wife, who afterwards destroyed it. Mrs. Summers testified that she kept the letter for some time and then burned it. The purported copy of this letter, dated at Moweaqua, March 27, 1928, was introduced in evidence over the objections of defendants, and omitting signature and date, is as follows: "I have been thinking of writing you since our meeting at Whitley & Fitzgerald's law office in Decatur but have neglected to do so until now. In regard to Pap's estate, beg to say we should settle this matter between us in a brotherly spirit but I don't want to be hounded by the lawyers. I have never been in court and by all means keep this case out of the courts. I have held this land for more than twenty-five years, and you know that I have worried over thinking of what would happen when Pap died. Will see you again soon."

Rose Gregory also testified that her father received from Joseph another letter in Joseph's handwriting which was dated at Moweaqua, April 19, 1928, and the main body of that letter is as follows: "I got a letter this morning with your name signed to it—threaten me what you are going to do to me. You and Mr. Patton conceived the whole thing in Whitley's law office in Decatur. Now you are fixing up a plain case of blackmail. You must be losing your mind. Now don't bother me any more. I have told you several times to get that out of your system. I don't care what anyone else thinks or do."

The foregoing is the substance of all the evidence introduced by complainants except that contained in a deposition of Albert J. Seiz taken on February 2, 1929, in California on written interrogatories. In this deposition witness states that he knew Isaac Gregory, Sr., rather intimately during his lifetime and was a neighbor to him for many years; that about fifteen or sixteen years before the deposition was taken Isaac placed some papers with witness to keep for him; that "Mr. Isaac Gregory, Sr., the father of Isaac L. Gregory and Joseph Gregory, at one time came to

my home and said to me he had some papers he wanted me to keep; that they were valuable papers as I recall, and that he was afraid they might get lost or destroyed. He had them tied up in a bundle, with a string tied around them. I took them and kept them for some time, and as near as I now remember there was among these papers a deed from Isaac Gregory, Sr., and his wife, Delia Gregory, to their son, Joseph Gregory, for 204 acres of land in Macon county, Illinois. I know this land well, as I lived in the vicinity of it for several years. There was also, as near as I now recall, another paper signed by Joseph Gregory, in which, as near as I can now state, it was provided that Joseph was to hold this same land for his father, Isaac Gregory, Sr., for and during his lifetime, and at his death it was to go to Isaac L. Gregory, Thomas M. Gregory and Joseph Gregory in equal parts, or words to that effect, as I now remember the matter. I talked with the said Isaac Gregory, Sr., at the time I had these papers in my possession, about the deed he made to his son, Joseph Gregory, and the one that his son had made to him, and he told me that was the way it was fixed up."

Albert J. Seiz, the witness whose deposition had been read in evidence on behalf of complainants, was called as a witness before the master by defendants and testified in substance as follows: He wanted to make some corrections in the statements in the deposition. Isaac Gregory, Sr., at one time prior to witness' marriage, in 1896, left a bundle of papers with witness which witness kept for some time. He looked at one of the papers, only, and as near as he remembered that was a deed from Isaac and his wife to Joseph conveying some land in Macon county. He did not look at any of the other papers and did not know what they were. He did not see any agreement signed by Joseph. When his deposition was taken he told the notary public what he knew about the case and later went back to the office of the notary, who handed him the deposition to read.

He did not have his eye-glasses and could not read. "The notary read the deposition to me, but I was hard of hearing and it was read fast and I did not understand it. I supposed it contained what I had told the notary about the case and so signed the deposition."

Joseph Gregory testified, over objection to his competency, in substance as follows: He was present when the deed from his father and mother to him was executed. It was delivered to him immediately after its execution and he had it recorded the same day. He has had possession of the deed ever since it was recorded. He has had the possession and use of and collected all rents from the farm since the execution of the deed. His father made his home with witness until the time of his death. Witness paid off the amounts secured by the mortgages on the land at the time the deed was made to him. He obtained the money to pay off these debts by the mortgage on the land which he and his wife executed in April of 1898 to the Connecticut Mutual Life Insurance Company. There was never any agreement between him and his father that he was to hold the land in trust. He stated that he wrote the letter of February 20, 1928, to M. W. Summers and the letter of April 19, 1928, to Isaac L. which are above set forth, but denied that he wrote or sent to Isaac L. the letter of March 27, 1928, a purported copy of which had been introduced in evidence by plaintiffs in error.

The principal contention of complainants is that the evidence in the record is sufficient to entitle them to the relief prayed for in their amended bill and that the lower court erred in dismissing the bill for want of equity. They also contend that Joseph Gregory was not a competent witness to testify concerning the execution and delivery of the deed by his father to him and to deny the existence of any agreement that he should hold the property in trust. It is the contention of defendants that the competent evidence in the record fails to establish the right of complainants to any

of the relief prayed for in their amended bill; that the evidence of statements made by Isaac after the execution of the deed to Joseph which tend to show a trust agreement was improperly admitted, and that there was no error in dismissing the amended bill for want of equity.

The hearsay evidence of statements of Isaac Gregory, Sr., made out of the presence of Joseph Gregory after the deed to Joseph had been executed, was not competent evidence to establish the existence of a trust agreement and should not be considered in determining whether the evidence is sufficient to sustain the case alleged in the amended bill of complainants. The general rule is that the grantor's declarations made out of the presence of the grantee are not admissible to impeach the grantee's title. (*Ryder* v. *Ryder*, 244 Ill. 297; *Phillips* v. *South Park Comrs.* 119 id. 626.) The deposition of Albert J. Seiz is repudiated by him, and, in view of the testimony given by him before the master, any statements contained in the deposition concerning the alleged trust agreement cannot be considered as his evidence. The evidence of this witness before the master shows that he had no knowledge whatever of the existence of any such agreement. The only evidence in the record which can be considered on the question whether there was an agreement under which Joseph held the property in trust is the letters written by Joseph. There is nothing in any letter written by him which is in evidence, except the letter of March 27, 1928, that even remotely tends to show the existence of a trust agreement. Joseph denied ever having written that letter, and it is contended by defendants that the purported copy of that letter was improperly admitted in evidence. We do not consider it necessary to determine this point. The statements in that letter on which complainants rely as establishing the fact that Joseph held the property in question in trust are the following: "In regard to Pap's estate, beg to say we should settle this matter between us in a brotherly spirit but I don't want to be

hounded by the lawyers. I have never been in court and by all means keep this case out of the courts. I have held this land for more than twenty-five years, and you may know that I have worried over thinking of what would happen when Pap died." It is argued that these statements show that Joseph recognized that Isaac L. had an interest in the property in question; that the use of the expression, "I have *held* this land," is inconsistent with the idea that he was the unconditional owner of the land, and that he, if the unconditional owner of the land, would have had ·no occasion to worry over what would happen when his father died. In *Chicago Home for Girls* v. *Carr,* 300 Ill. 478, this court stated that the word "held" has no primary or legal technical meaning and that the meaning to be given to the word is determined largely by the connection in which it is used; that it has been held that the word "having" or "hold," as to property, imports ownership and time of ownership, and that this court has decided that the term "held by" may be used in a statute or contract as equivalent to ownership. In that case it was decided that the words "hold" and "held by" were used in a corporation charter as the equivalent of "own" and "owned." When the statements in the letter of March 27, 1928, are considered in the light of the circumstances under which the letter was written, it cannot be said that they tend any more to show a recognition that Isaac L. had an interest in the land than a denial of his claim of such interest. But if the statements in the letter be taken as a recognition by Joseph that he had not been the unconditional owner of the property during the twenty-five years referred to, there is no evidence to show the conditions attached to his ownership or the terms of the trust on which the property was held by him. In the case of *Kingsbury* v. *Burnside,* 58 Ill. 310, which is relied upon by complainants, it was held that the Statute of Frauds did not provide that a trust in land should be declared in writing but that such trust should be manifested

and proved by writing. In that case it was held that a letter written by one holding the title to land under a deed purporting to convey an unconditional title, and an instrument executed by such person directing the disposition of his property upon his death, sufficiently manifested and proved that the property was held in trust by him to allow the admission of parol proof of the terms of the trust. The parol evidence in that case showed that there was an agreement on the part of the grantee to hold the property in trust and showed who was the *cestui que trust* and the extent of her interest in the property. In that case there was no question, under the proof, of the existence of the trust agreement or who was the *cestui que trust* or of the extent of the interest of the *cestui que trust* in the property, but the only question was as to whether there was a sufficient manifestation of the trust in writing to take the case out of the Statute of Frauds, which was relied upon as a defense by the trustee.

The law is that in order to establish a trust the evidence must be clear and satisfactory, not only as to the existence of the trust but also as to its terms and conditions. (*Lurie* v. *Sabath*, 208 Ill. 401.) It is essential to the creation of a trust that the declaration must make reasonably certain its material terms, and these terms include, first, the subject matter or property embraced within the trust; second, the beneficiaries or persons in whose behalf the trust is created; third, the nature and quantity of the interests which they are to have; and fourth, the manner in which the trust is to be performed. If any of these necessary elements are not described with certainty no trust is created. *Marble* v. *Marble*, 304 Ill. 229; *Snyder* v. *Snyder*, 280 id. 467; *Orr* v. *Yates*, 209 id. 222.

It is unnecessary for us to decide the question whether Joseph Gregory was a competent witness to testify concerning the execution of the deed from his father to him and to deny the existence of a trust agreement, because if that evidence be not considered at all there is still no satisfactory

proof that Joseph ever agreed to hold the property conveyed to him in trust, and if there was proof of a trust agreement there is a total absence of proof that by the agreement complainants are beneficiaries under the trust.

The circuit court did not err in dismissing the amended bill for want of equity, and the decree of that court is affirmed.

*Decree affirmed.*