(No. 29613.—

NORMA HOUDEK, Appellee, *vs.* ELEANOR EHRENBERGER
*et al.,* Appellants.

*Opinion filed March 19, 1947—Rehearing denied May 19, 1947.*

LOMMEN D. ELEY, and BOYLE, MURPHY & NELSON, both of Chicago, for appellants.

GARIEPY & GARIEPY, of Chicago, (FRED A. GARIEPY, and JOHN SPALDING, of counsel,) for appellee; LUIS KUTNER, and MARTIN S. GERBER, both of Chicago, for appellee on rehearing.

Mr. JUSTICE WILSON delivered the opinion of the court:

On December 5, 1942, the plaintiff, Norma Houdek, filed her complaint in the superior court of Cook county seeking the declaration of a resulting trust in favor of her father's estate as to three different parcels of real estate conveyed by or at the direction of her father during his lifetime to the principal defendant, Eleanor Ehrenberger, hereinafter referred to as the defendant. The cause was heard before a special commissioner, who found for defendants and, accordingly, recommended that the complaint be dismissed. The chancellor sustained plaintiff's exceptions to the report of the special commissioner, found that

a resulting trust existed, and entered a decree requiring defendants to execute and deliver to plaintiff quitclaim deeds to a one-half interest in each parcel. Defendants prosecute a direct appeal to this court, a freehold being necessarily involved.

Plaintiff and defendant are sisters, the only children of Joseph and Anna Nerad, and the sole heirs-at-law of their father, who died intestate on August 9, 1942. Decedent left an estate consisting of personal property valued at approximately $50,000, but held no real property in his own name when he died. The real estate involved in the present controversy is worth about $30,000. Parcel I, the Nerad family residence, located at 7104 Riverside Drive, Berwyn, was purchased by Joseph Nerad, in 1930, for $23,000, paid out of his own funds. On May 1, 1937, he executed a quitclaim deed to parcel I to defendant and caused it to be recorded.

Parcel II is located on Haas avenue, in Lyons, and is improved with a two-story frame building having a tavern on the first floor and an apartment above. Foreclosure proceedings had already been instituted when Nerad purchased the mortgage note in the spring of 1940 for $1500. At Nerad's direction, the note and mortgage were assigned to defendant and she was substituted as party plaintiff in the foreclosure action. Arthur Thyfault, Nerad's attorney, purchased the property at the foreclosure sale in the name of defendant and, upon the expiration of the period of redemption, a master's deed was issued to her.

Parcel III, a vacant lot on Maple avenue, in Berwyn, was purchased by Nerad on December 23, 1938, for $250 and back taxes. He took title in the name of Marie Henja, secretary of his real estate adviser, Frank Topinka, and, subsequently, at Nerad's direction, title was transferred to defendant by a deed dated March 2, 1942.

The real estate transactions here involved must be considered in the light of Nerad's domestic circumstances.

Title to parcel I was taken by Nerad in the names of his wife, Anna, and himself in joint tenancy. On August 2, 1935, Anna Nerad obtained a divorce from her husband. Plaintiff testified in behalf of her mother in the divorce action. Nerad was ordered to pay $150 a month as alimony and his wife waived all interest in his real estate. On December 1, 1935, plaintiff and her husband, Albert Houdek, got into a brawl with Nerad and Fred Stechter in a local tavern. As an aftermath, plaintiff and her husband brought an action against Nerad and Stechter for assault and battery, asking $50,000 damages, and Albert Houdek was discharged from his employment at the Nerad Brothers Coal Company. Norma and Albert Houdek were represented by the law firm of Faxon and Wiggins. The latter had represented Anna Nerad in her divorce action. Nerad and his codefendant in the tort action filed an answer alleging that they acted only in self-defense after Houdek and his wife had struck the first blows. Subsequently, on June 17, 1936, this action was dismissed and Houdek was re-employed by the coal company. The attorneys' fees incurred by Norma and Albert Houdek were paid by Nerad and his former wife, Anna.

In 1936, defendant and her husband moved onto parcel I and lived there with Nerad until November, 1938. Plaintiff and her husband lived rent free in a two-flat frame building on Park avenue, South Riverside. These premises, purchased by Nerad with title in defendant, were sold to Joseph Thuma in October, 1940, and, shortly thereafter, plaintiff and her family vacated their apartment and moved in with Nerad on parcel I where they continued to reside rent free until Nerad's death.

On April 6, 1937, a supplemental decree was entered in the 1935 divorce action, under the terms of which Anna Nerad received the sum of $20,000 in lieu of future alimony and executed a quitclaim deed to parcel I and other

real estate not involved here. Less than a month later, Nerad transferred title to parcel I to defendant.

In January, 1938, Nerad sold his interest in the Nerad Brothers Coal Company for more than $35,000 and retired from business. In April of the same year, Joseph and Anna Nerad married each other again. Fred Stechter, codefendant in the tort action, and his wife accompanied the remarried couple on a trip to Europe. Parcel III was purchased and taken in the name of the secretary, Marie Henja, shortly after the party's return.

Decedent purchased the mortgage indebtedness on parcel II in the spring of 1940 and the foreclosure proceeding was carried through to a master's sale before the end of the year, the certificate of sale naming defendant as purchaser. In February, 1941, Anna Nerad obtained a second divorce from her husband. She again waived alimony and, also, dower and homestead rights. In the uncontested divorce action, defendant refused to be a witness, while plaintiff testified that her father became intoxicated two or three times a week.

In March, 1942, while sharing the occupancy of parcel I with plaintiff and her family, Nerad caused the title to parcel II to be transferred to defendant. Nerad's death occurred in the same year. No will was found. With the consent of plaintiff and defendant, defendant's husband, Emil Ehrenberger, was appointed administrator of the estate. A bitter family dispute ensued with respect to the ownership of all the parcels of real estate, the legal aspects of which are the subject of the present proceedings.

The law relating to resulting trusts has long been well settled. A resulting trust arises, by implication of law, from the acts of the parties. (*Cook* v. *Blazis*, 365 Ill. 625; *Dorman* v. *Dorman*, 187 Ill. 154.) Where land is purchased with the money of one person and title is taken in the name of another, the law raises a resulting trust in favor of the purchaser. The burden of proof is upon the

party seeking to establish a resulting trust and the evidence must be clear, strong and unequivocal and must establish the payment by the claimed beneficiary beyond a doubt. (*Jones* v. *Koepke*, 387 Ill. 97; *Heineman* v. *Herman*, 385 Ill. 191; *Curielli* v. *Curielli*, 383 Ill. 102.) Where land is purchased by a husband and title is taken in the name of his wife or child a presumption obtains that the property was conveyed to the wife or child as a gift or advancement, but this presumption is not conclusive and may be rebutted by proof, it being purely a question of intention whether a resulting trust arises in such a case. (*Nickoloff* v. *Nickoloff*, 384 Ill. 377; *Walker* v. *Walker*, 369 Ill. 627; *Cook* v. *Blazis*, 365 Ill. 625.) Again, the burden of proof is upon the party seeking to establish the resulting trust and the evidence necessary to overcome the presumption in favor of a gift or advancement must be clear, convincing and satisfactory, and if the evidence is doubtful or capable of reasonable explanation upon any other theory, the burden is not sustained. *Cook* v. *Blazis*, 365 Ill. 625; *Dodge* v. *Thomas*, 266 Ill. 76; *Euans* v. *Curtis*, 190 Ill. 197.

A summary of the evidence relating to intention becomes necessary. As to parcel I, plaintiff makes much of the fact that Nerad continued to occupy the premises from the time he executed the deed to defendant until his death. In addition, as to both parcels I and II, Nerad ordered and paid for repairs and improvements, paid the insurance premiums on policies issued in his own name, and was responsible for all taxes, although tax bills were rendered in defendant's name. All water, fuel and utility bills on parcel I were paid by Nerad. Parcel II, the tavern, was rented under a lease negotiated by Nerad and signed by him as agent for defendant, the rent being paid by check drawn to defendant's order and by her indorsed to her father. While the parties exhibit disagreement as to the weight to be accorded such evidence, the rule of law is

simply stated. Where, by or at the direction of a parent, a deed is executed to his child, the facts that the parent occupied the premises, paid taxes and made improvements, although some evidence of the absence of an intention to make a gift, are neither sufficient to overcome the presumption of a gift nor inconsistent with the theory of an advancement. *Hartley* v. *Hartley,* 279 Ill. 593; *Dorman* v. *Dorman,* 187 Ill. 154; *Pool* v. *Phillips,* 167 Ill. 432.

Plaintiff contends that the evidence recounted strongly confirms the expressed intention of Nerad to place title in the name of defendant solely for convenience. Taking title in the name of a wife or child for the sake of convenience is a recognized criterion whereby the presumption of a gift may be rebutted. (*Cook* v. *Blazis,* 365 Ill. 625; *Hartley* v. *Hartley,* 279 Ill. 593.) John Sherlock, Nerad's attorney in the first divorce action, testified that he prepared the deed to parcel I, his client stating at the time that he did not want any property standing in his own name because of his wife and other creditors. The $20,000 alimony settlement had been entered of record only three weeks prior to the execution of the quitclaim deed to defendant, so presumably the wife was no longer a creditor. The witness admitted that he did not know of any other creditors. Sherlock also testified that, in a conversation with Harry Wiggins, a member of the firm of Faxon and Wiggins, Wiggins said that their client, Anna Nerad, felt Joseph Nerad had not made a full disclosure of his assets and that she was threatening to have the alimony settlement vacated. Testifying for defendant, Wiggins flatly denied making any such remarks to Sherlock and stated, further, that Anna Nerad never contemplated reopening the alimony settlement. Defendant's witness, Stechter, testified that while *en route* to Europe with Nerad in June, 1938, the latter several times remarked that he had transferred his real estate to defendant, and that she would be safe if anything happened to him because the

property belonged to her. Stechter was a codefendant with Nerad in the tort action previously described.

As to parcel III, Arthur M. Rawers, the mortgagee's attorney, testified that Nerad told him that he was taking an assignment of the note and mortgage in defendant's name because he was having financial difficulties. The witness was uncertain as to whether Nerad's difficulties concerned his wife or his business, but thought they involved his wife. Thyfault, the attorney who represented Nerad in the purchase of the mortgage debt, testified that he informed him he wanted to make the purchase for his daughter, Eleanor, and instructed him to prepare the documents so that title would eventually vest in her, and that, afterwards, Nerad instructed him to bid in the property in her name at the foreclosure sale and to have the master's deed issued to her.

Suing as an heir, plaintiff claims that statements made by her father to Thyfault are privileged and were improperly admitted over her objection. Plaintiff thus places herself in the incongruous position of relying on the statements allegedly made by Nerad to his attorney, John Sherlock, as the very foundation of her case as to parcel I, while, at the same time, denying the admissibility of the statements allegedly made by Nerad to his attorney, Thyfault, during the acquisition of parcel II. In any event, the communications addressed to Thyfault were not privileged because it does not appear they originated in a confidence that they would not be disclosed. (*Jackson* v. *Pillsbury*, 380 Ill. 554, *Dickerson* v. *Dickerson*, 322 Ill. 492; Wigmore on Evidence, 3d ed. sec. 2285.) The communications addressed by Nerad to Thyfault concerning the former's intention to make a gift to his daughter were precisely the same as the intention presumed from the assignment of the mortgage, the master's certificate and the master's deed to her, all being spread upon the public records in the foreclosure proceeding. In addition, under

the circumstances of the present case, the disclosure by the attorney was necessary to effectuate the intention of the client. *Dickerson* v. *Dickerson,* 322 Ill. 492.

Plaintiff seeks to discredit Thyfault's testimony on the ground that he had previously represented defendant in other matters. In point of fact, the other matters consisted of a tax foreclosure action on the parcels here involved in which Thyfault was originally retained by Nerad, and was re-employed by defendant upon the death of her father. The statements made by Nerad to Thyfault are supported by Joseph Thuma who testified to a conversation with Nerad in 1940 in the course of which Nerad declared that he had conveyed all his real property to defendant and wanted her to have it since his wife and other daughter had given him a lot of trouble. Thuma's wife was a close friend of defendant, and Thuma, the purchaser of the building where the plaintiff and her husband lived until 1940, encountered difficulty in persuading them to either pay rent or vacate the premises.

The testimony concerning Nerad's intention at the time of the acquisition of parcel III, the vacant lot, is highly contradictory. Topinka, Nerad's real estate adviser, prepared both the deed from the grantor to Marie Henja, the secretary, in 1938, and, also, the subsequent deed from her to defendant in 1942. He testified that, on the occasion of the preparation of each deed, Nerad said that he did not want to have any title in his name on account of creditors and his ex-wife. The witness admitted that although he knew Nerad well, he did not know of any creditors. Topinka testified that Marie Henja's deed to defendant was prepared and signed by her in March, 1942. Marie Henja testified that she ceased to work for Topinka in July, 1941, some seven months earlier. She also contradicted his assertion that the penciled notation "consideration less than $100," appearing on the margin, was in her handwriting. Topinka offered a lame explanation as to

why two different typewriters were used in preparing the deed. Thyfault's testimony that Nerad gave him the deed executed by Marie Henja, complete in all respects except for the date and the grantee's name, and directed him to insert defendant's name as grantee because he wished to make a gift of the property to her, is far more credible and is the only satisfactory explanation of the difference in type.

The disposition of several other matters remains. Plaintiff argues that the deed to parcel I was never delivered to defendant and that, in fact, defendant did not know title was in her name until after their father's death. True it is that after recording, the deed was kept by Nerad in a trunk at his residence. Plaintiff has precluded herself, however, from urging nondelivery of the deed. Not only was the issue not raised in the superior court, but plaintiff, in seeking to establish a resulting trust, impliedly admits that legal title is in defendant and, by the allegations of her complaint, specifically admits delivery of the deeds. (*Roche* v. *Roche,* 286 Ill. 336.) It further appears that defendant knew she was the grantee, tax bills being mailed to her while she resided on parcel I and one bill, at least, being paid under protest, the protest being in her handwriting.

As additional evidence to overcome the presumption of a gift, plaintiff relies on the testimony of six witnesses to the effect that, between 1937 and the date of his death, Nerad claimed to be the owner of parcel I and made several attempts to sell the property. In no instance were the witnesses' conversations with Nerad held in the presence of defendant, and her objections to the admission of such testimony were properly sustained. A statement or declaration by one claiming the ownership of property is inadmissible in derogation of a title previously transferred. (*Gregory* v. *Gregory,* 343 Ill. 630; *Delfosse* v. *Delfosse,* 287 Ill. 251; *Essary* v. *Marvel,* 274 Ill. 576;

*Dodge* v. *Thomas,* 266 Ill. 76.) Plaintiff seeks to avoid application of the general rule by claiming that there is a well-recognized exception in favor of the admissibility of such statements and declarations where the declarant is in possession of the property. The cases cited in support of the alleged exception (*Flannery* v. *Woolverton,* 329 Ill. 424, specific performance of alleged oral contract between father and son; *Rush* v. *Rush,* 304 Ill. 558, declarations of grantee made in presence of alleged purchaser; *Knight* v. *Knight,* 178 Ill. 553, statements admitted to show acquisition of title by prescription adverse to the title conveyed by deed; *Kotz* v. *Belz,* 178 Ill. 434, no deed,—declarations used to show nature of estate claimed during twenty years' adverse possession) do not confirm the exception.

Defendant, in support of her position that the deeds in question are gifts, maintains that her father's intention to make a gift resulted, in part, from his feeling of resentment toward plaintiff and her husband. As one phase of the testimony in support of her assertion, defendant charges plaintiff with having testified falsely with respect to her participation in the tort action in 1935 and, also, with regard to her testimony in behalf of Anna Nerad in the second divorce action in 1941. While the charge of perjury is not fully substantiated, it is more than a mere manifestation of a bittter family feud. Plaintiff, although admitting she attended the conference in the offices of Faxon and Wiggins, asserted that she was not a coplaintiff in the tort action. Again, as to the divorce in 1941, plaintiff admitted that she testified in behalf of her mother, but flatly denied that she testified her father was inebriated two or three times a week. Plaintiff did not change her testimony until defense counsel had introduced incontrovertible evidence that her testimony was false. Recalled as a witness, plaintiff said that her earlier testimony was not based on any recollection and that, her memory having been refreshed

by an inspection of the files in the tort and divorce actions, she desired to change her testimony. No reason suggests itself for disagreeing with the special commissioner's conclusion that her testimony was untrustworthy.

A consideration of all the facts and circumstances impels the conclusion plaintiff has not met the burden of proof placed upon her to show by clear, convincing and satisfactory evidence that her father intended to retain all the equitable and beneficial interest in the three parcels of real estate involved. Not having been overcome, the presumption in favor of a gift to defendant stands. As we have observed, Nerad's possession of parcel I and receipt of rents from parcel II, coupled with the repairs improvements and payment of taxes on both parcels, is not alone, sufficient to establish an intention contrary to the legal presumption. While, as to each parcel, plaintiff introduced evidence of an express intention by Nerad to transfer title to defendant for convenience only, such evidence is far from clear and convincing. Frank Topinka, testifying for plaintiff in connection with the transfer of parcel III, was almost wholly discredited by his secretary, Marie Henja, and an examiner of questioned documents called as a witness by defendant. Defendant's witness, Thyfault, did no more than add the final touches to the culmination of evidence contradicting Topinka. While the testimony of Sherlock, as to Nerad's intention in conveying parcel I to defendant being for convenience only, was not directly contradicted, still the witness was unable to state that Nerad had any creditors, and his testimony relating to Anna Nerad's reopening of the divorce settlement of 1937 was flatly denied by Wiggins, Sherlock's source of the alleged information. Rawers's testimony as to parcel II gives mild support to plaintiff's theory of the case, but is diametrically opposed by Thyfault's testimony. Nowhere in the record is there any convincing and satisfactory evidence that Nerad had the realty involved herein con-

veyed to defendant for convenience, only. Nerad was never in financial difficulties. On the contrary, it appears that he was always well supplied with funds. He had no actual or potential creditors except his wife. The $20,000 settlement in lieu of future alimony, approved and incorporated in the supplemental decree of divorce entered April 6, 1937, taken together with the testimony of Wiggins, the wife's attorney, that she did not contemplate reopening the settlement agreement, quite thoroughly eliminates Anna Nerad as a creditor or potential source of financial difficulties.

Plaintiff's own testimony does little to advance her cause and only serves to point up the fact that she and her husband engaged in a barroom brawl with her father and others in December, 1935, and subsequently instituted an action for assault and battery, seeking damages in the amount of $50,000. True, defendant's own witness, Stechter, testified that Nerad told him in 1938 that his quarrel with plaintiff and her husband was all patched up. However, the greater part of Stechter's testimony being unfavorable to plaintiff, she prefers to rely on the rehiring of her husband by the coal company, her receipt of postcards from Nerad while he was in Europe, and her years of living rent free at his expense to show that the tavern brawl and ensuing lawsuit had been forgiven. Plaintiff's change of testimony under fire also draws attention to the fact that at the hearing on the second divorce she testified Nerad was intoxicated two or three times a week over a six months' period. Plaintiff was then living with him and maintains that he requested her to appear as a witness for her mother.

The case for a resulting trust would be stronger if, subsequent to the conveyances, Nerad had declared, in the presence of defendant, that he still owned the properties and defendant had acquiesced in such statements, (*Rush* v. *Rush,* 304 Ill. 558,) or if Nerad, during his lifetime, had demanded that defendant reconvey any of the properties,

(*Hartley* v. *Hartley,* 279 Ill. 593,) or defendant had ever admitted that she held the parcels in trust for him, (*Cook* v. *Blazis,* 365 Ill. 625; *Dorman* v. *Dorman,* 187 Ill. 154,) or the conveyances to defendant would leave Nerad impoverished or cut off the natural objects of his bounty, (*Skahen* v. *Irving,* 206 Ill. 597; *Dorman* v. *Dorman,* 187 Ill. 154; *Pool* v. *Phillips,* 167 Ill. 432,) or if Nerad had an estranged wife who might refuse to join in a conveyance, (*Hartley* v. *Hartley,* 279 Ill. 593,) or if he had a second wife whose inchoate dower he sought to preclude, (*Cook* v. *Blazis,* 365 Ill. 625,) or if he had sold property held in the name of another, (*Hartley* v. *Hartley,* 279 Ill. 593; *Pool* v. *Phillips,* 167 Ill. 432.) It suffices to note that no such circumstances exist in the present controversy. Although the evidence adduced by defendant's witnesses, exclusive of the testimony of Wiggins and Thyfault, does little to advance the presumption of a gift, and does not show that Nerad told defendant he was making gifts of real estate to her or that she exercised dominion and control over any of the properties, or that she authorized her father to execute leases to parcel II, still plaintiff cannot base her case on such infirmities in the testimony for the defense. Plaintiff seeking to establish a resulting trust, the burden of proof rests on her to overcome by convincing and satisfactory evidence the presumption that the conveyances were intended as a gift or advancement. The testimony adduced in behalf of plaintiff is not so clear and unequivocal as to rebut the presumption. She has failed to sustain the burden of proof the law casts upon her.

The decree of the superior court of Cook county is reversed and the cause remanded, with directions to dismiss plaintiff's complaint for the want of equity.

*Reversed and remanded, with directions.*