(No. 32560.—

SAMUEL J. FIELDS, Appellee, *vs.* LEROY W. FIELDS *et al.*— (DEOITESE M. FIELDS, Appellant.)

*Opinion filed May 20, 1953—Rehearing denied September 21, 1953.*

FROHLICH & WACHOWSKI, of Chicago, (CASIMIR R. WACHOWSKI, and RAYMOND WASIK, of counsel,) for appellant.

PRESCOTT, BURROUGHS & TAYLOR, of Chicago, (A. MORRIS BURROUGHS, and EUCLID LOUIS TAYLOR, of counsel,) for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

The plaintiff, Samuel J. Fields, filed suit in the circuit court of Cook County, against the defendants, Leroy W. Fields and Deoitese Fields, to impress an improved parcel of real estate in Chicago with a resulting trust. The trial court entered a decree in favor of the plaintiff. Deoitese M. Fields, one of the defendants, prosecuted a direct appeal to this court since a freehold is involved.

The complaint alleged that the plaintiff paid for the property from his own funds, that the legal title thereto was vested in plaintiff's son, Leroy W. Fields and his son's wife, Deoitese M. Fields, as joint tenants, but that they held title in trust for him. The son filed an answer admitting all of the substantial allegations of the complaint and averring that he had made alterations and improvements, for which he was obligated, but that his wife collected rents and refused to account for same or to use any of the rentals to pay for such improvements. Deoitese M. Fields filed a separate answer relating that the premises

were purchased by her and her husband, that she has been paying taxes and maintaining the property from rents and that a conspiracy existed between her husband and his father to defraud her of her rights and interest in the property.

It appears that Leroy moved to Chicago to work in July, 1947, without his wife and that in February, 1948, he approached his father and indicated that living quarters were not obtainable for him and his wife without buying a property and that they did not have funds with which to buy. Plaintiff went to Chicago in the early part of 1948 and made some inquiries relative to the purchase of a property. Several buildings were shown to him including the three-story flat in question. On March 31, 1948, a contract was entered into for the flat, the purchase price of which was $14,000. Such contract was signed by the seller and Leroy W. Fields and provided for the payment of $1000 earnest money and the balance to be paid within fifteen days after approval of title. The contract was indorsed with a cash payment of $600, and a check for $400 payable to seller's agent was given by Samuel J. Fields to complete the $1000 down payment.

On April 9, 1948, under the terms of an escrow agreement there was deposited with the escrow agent the sum of $4000, and a few days later the proceeds of a $9000 loan were likewise deposited. The escrow provided that the deed was to be made to the defendants as joint tenants. The record is obscure as to how the property came to be conveyed in joint tenancy but there is nothing to show that the parties were not fully aware of the joint-tenancy conveyance. The plaintiff was present during the transaction and signed the $9000 note secured by a mortgage on the premises as additional security. When the title company asked for a statement as to the interest, if any, of Samuel J. Fields in the property because he had signed the note, one

Taylor, an attorney, gave a written statement that plaintiff had no interest therein. There was some dispute as to who such attorney represented, but immediately thereafter the objection was waived and the transaction consummated.

Plaintiff contends that since his funds were used for such purchase and additional sums were put up by him thereafter for improvements, a trust resulted in his favor and that he is entitled to a deed to the premises. The record is clear that $400 of the earnest-money payment was paid by a check drawn by the father, as well as $360 for the loan commission. He advanced $25 to his son for an appraisal and the $4000 escrow payment was made by a check drawn by Samuel J. Fields payable to himself and indorsed over to his son, who in turn indorsed it in blank and delivered it to the escrow agents. The question for determination is the legal effect of the payment and advancement of funds.

A resulting trust arises by operation of law and is founded on a presumed intent gathered from the acts of the parties. It does not depend upon a contract or agreement and usually comes into being when one person furnishes the consideration for the purchase of property while the conveyance is taken in the name of another. (*Kane* v. *Johnson,* 397 Ill. 112; *Houdek* v. *Ehrenberger,* 397 Ill. 62; *McCabe* v. *Hebner,* 410 Ill. 557.) It arises, if at all, the instant the legal title is taken and the title vests. (*Kohlhaas* v. *Smith,* 408 Ill. 535; *Brod* v. *Brod,* 390 Ill. 312; *Spina* v. *Spina,* 372 Ill. 50.) The burden of proof rests upon the person seeking to establish a resulting trust, and the evidence, to be effective for that purpose, must be clear, convincing, unequivocal and unmistakable, and must establish beyond a doubt the payment by the claimed beneficiary at the time the title was taken in the alleged trustee. *Kohlhaas* v. *Smith,* 408 Ill. 535; *Hille* v. *Barnes,* 399 Ill. 252; *Houdek* v. *Ehrenberger,* 397 Ill. 62.

It is sometimes difficult to ascertain the intention of the parties in a transaction such as this, but here much of the evidence is not in dispute. Paragraph 6 of the complaint alleges that defendants promised to pay the plaintiff the money invested by him. Plaintiff repeatedly testified that he loaned the money to the defendants, that he expected no interest, that he was to be repaid a little at a time monthly but that no regular payments were agreed upon. Similar testimony was given by his son. Deoitese testified that plaintiff told her, on the way up to Chicago to purchase the property, that in buying the building it was going to be hard on them (the defendants) in the beginning but if they worked hard and paid the bills and mortgage then they would be able to take vacations and buy cars and furniture that they could not now afford. Her testimony was not disputed.

Subsequent events, while relatively unimportant since a resulting trust, if any, arose at the time of the purchase, indicate that plaintiff treated the advancements as loans. He turned over to the defendants various sums of money, totalling several thousand dollars, which he said one or both of them agreed to repay. They drew plans, with his knowledge, and did extensive remodeling which was financed largely from F.H.A. guaranteed loans.

It seems clear that it was the intention of the plaintiff to loan money to the defendants for the purchase of the building and for subsequent improvements and furnishings. The relation of debtor and creditor was thus created and the funds used for the purchase were those of the borrower, not the lender.

A loan and a resulting trust are inconsistent. To say that a person could make a loan to another, the proceeds of which went to the purchase of property, and three years later, when his loan appeared to be in jeopardy, be granted a resulting trust in lieu of the debt, would in effect permit him to change the type of his investment at his own option.

A resulting trust does not arise where funds advanced are either a gift or a loan. *Briscoe* v. *Price,* 275 Ill. 63; *Reminger* v. *Joblonski,* 271 Ill. 71.

It is argued that, while plaintiff testified that both defendants agreed to repay the funds advanced for the purchase, Deoitese denied she had promised to repay it. This is not an action to recover a debt and we are therefore not called upon, nor privileged, to pass upon that disputed. question of fact.

One point of plaintiff's brief is devoted to the law regarding constructive trusts. Since his pleadings were drafted on the theory of a resulting trust and his proof throughout was an attempt to establish a resulting trust, there is no need to discuss the possibilities of a constructive trust.

We are of the opinion that a resulting trust has not been established. The decree of the circuit court of Cook County is reversed.

*Decree reversed.*