DAVID S. DEMPSTER *vs.* V. R. LANSINGH *et al.* Exrs., Appellees.—(SARA B. DEMPSTER *et al.* Exrs., Appellants.)

*Opinion filed February 16, 1910—Rehearing denied April 8, 1910.*

1. PLEADING—*the records attached as exhibits to a bill control.* Where the records of former chancery suits are attached as exhibits to a bill in chancery the records will control in case of a discrepancy between such records and the averments of the bill.

2. RES JUDICATA—*only parties concluded by a decree are adversary parties.* The only parties concluded by a decree in a chancery proceeding are adversary parties, and the matters determined, in order to bind them, must be an issue between them.

3. SAME—*when decree is res judicata between co-complainants as to ownership of stock.* In a chancery proceeding by certain stockholders to determine whether the debt for which their stock was pledged has been paid and whether they are entitled to redeem such stock, the interests of the co-complainants are not adverse until the court determines that the debt is paid and that the right to redeem exists, but in the matter of determining, as between the co-complainants, who are the owners of the stock their interests are adverse, and the finding of the decree as to such ownership is binding upon them and is *res judicata* of that question.

4. SAME—*doctrine of estoppel by verdict stated.* When some specific fact or claim has been adjudicated and determined in a former suit and the same fact or question is again put in issue in a subsequent suit between the same parties, the determination in the former suit, if properly presented and relied upon, will be conclusive upon the parties in the subsequent suit, without regard to whether the cause of action in each case is the same.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

CANNON & POAGE, (EDWIN M. ASHCRAFT, of counsel,) for appellants.

ROBERT F. PETTIBONE, and WILLIAM S. FREEMAN, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

David S. Dempster, the testator of appellants, on the seventh day of April, 1902, filed his bill in chancery in the circuit court of Cook county against Killian V. R. Lansingh, Clancey J. Dempster, Robert F. Pettibone and others to determine the ownership of 455 shares of the capital stock of the Rosehill Cemetery Company, and for an accounting. The bill was amended, and the trial court sustained a demurrer to the amended bill so far as it sought relief with reference to said shares of stock, and the appellants not desiring to proceed further until the ruling of the trial court upon the demurrer to that part of the bill which sought relief with reference to said stock should be reviewed by the Appellate and Supreme Courts, the bill was dismissed, and an appeal was prosecuted to the Appellate Court for the First District, where the decree of the circuit court was affirmed, and a further appeal has been prosecuted to this court.

The Rosehill Cemetery Company was organized under a special act of the legislature in 1859. Shortly after its organization the management of the corporation was assumed by its creditors, who controlled its affairs until 1896. In 1882 a syndicate of certain of the stockholders of the corporation was formed and an instrument in writing was executed by said stockholders, whereby Killian V. R. Lansingh and Samuel A. Kean, as trustees, were to take title to said stock, and were authorized to proceed, in such manner as they might deem necessary for the best interests of the members of the syndicate, to restore to the stockholders the management of the corporation, and when they had

completed the duties as trustees conferred upon them by said syndicate agreement they were to account to the syndicate of the stockholders. The syndicate agreement is quite lengthy and will be found set forth in full in the opinion of the Appellate Court. The controversies between the members of the syndicate and the creditors of the corporation and between the members of the syndicate have extended over a long period of time and are quite complicated. The history of the Rosehill Cemetery Company, and the litigation between the corporation and its stockholders and its creditors and between the members of the syndicate, will be found in *Higgins* v. *Lansingh,* 154 Ill. 301, *Rosehill Cemetery Co.* v. *Dempster,* 223 id. 567, and *Dempster* v. *Lansingh,* 234 id. 381, so far as is necessary to an understanding of the matters in controversy in this case. In 1896, after the opinion was filed in *Higgins* v. *Lansingh, supra,* the stockholders were restored to the management and control of the corporation. Samuel A. Kean never assumed any active duties under the syndicate agreement, but Killian V. R. Lansingh was actively engaged in adjusting the differences between the syndicate stockholders and the creditors of the corporation from 1882 to 1896. In 1885 David S. Dempster, the testator of appellants, purchased 50 shares of the capital stock of the Rosehill Cemetery Company and became a stockholder in the corporation subject to the claims of the creditors of the corporation, but he did not sign the syndicate agreement until 1895, although prior to that time and from the time he purchased said stock he paid his *pro rata* share of all expenses which had been incurred by the syndicate under the management of Killian V. R. Lansingh. The bill alleges that Preston & Kean owned 321 shares of the syndicate stock, and that Preston & Kean, being insolvent, made an assignment of said 321 shares of stock to their assignee, Oliver H. Horton; that Oliver H. Horton, as such assignee, paid the *pro rata* assessments to the syndicate levied by the syndicate

upon said stock for a time, when he became discouraged and ceased to make payments, and thereafter he surrendered said 321 shares of stock to Killian V. R. Lansingh for the benefit of the syndicate; that Lansingh appropriated 107 shares of said stock to his own use and gave 106 shares of said stock to Clancey J. Dempster and 108 shares of said stock to Samuel A. Kean; that Killian V. R. Lansingh received 78¾ shares of stock from the estate of John Dempster, deceased, 25 shares of stock from the A. T. Sherman family and 6¼ shares from G. H. Scranton as compensation for his services under said syndicate agreement, and that he purchased 9 shares of said syndicate stock and suffered Robert F. Pettibone to purchase 15 shares of said syndicate stock, all of which shares aggregate 455; that Clancey J. Dempster was the brother-in-law of Killian V. R. Lansingh and paid no consideration for the 106 shares of stock transferred to him, and that Robert F. Pettibone was the attorney for the syndicate at the time he purchased said stock and received said stock in payment of attorney's fees.

It is the view of the appellants that the stock held by Killian V. R. Lansingh, Clancey J. Dempster and Robert F. Pettibone now belongs to the syndicate, and that such stock should be divided among the members of the syndicate *pro rata,* according to the number of shares held by said members of the syndicate, respectively, and that Killian V. R. Lansingh should account to the syndicate for the value of the 108 shares of stock transferred to Samuel A. Kean, the title to which was divested by the sale made under the decree entered in the case of *Hopkins* v. *Kean,* which will be referred to hereafter. The records in *Higgins* v. *Lansingh* and in *Hopkins* v. *Kean* are attached to the bill filed in this case, in full, in the form of exhibits, and it is the contention of the appellees (and such was the view of the trial and Appellate Courts) that the decrees entered in those cases are *res judicata* of the question of the

ownership of said stock and are binding upon the appellants, and that the ownership of said shares of stock cannot be re-litigated in this case; while it is the contention of the appellants that those decrees were entered in two chancery suits which were being carried on by ·Killian V. R. Lansingh in the interest of the testator of the appellants and other members of said syndicate, and that neither of said chancery suits was adverse to the testator of the appellants or the other members of said syndicate, and that the findings in the decrees entered in said chancery suits as to the ownership of said shares of stock, as between the appellants and the appellees, are not in this proceeding binding upon the appellants.

The *Higgins-Lansingh case* was a bill in chancery filed by Killian V. R. Lansingh, as administrator *de bonis non* of the estate of John Dempster, deceased, as the owner of certain shares of the stock of the Rosehill Cemetery Company, on his own behalf and on behalf of all other stockholders of the Rosehill Cemetery Company similarly situated, against Van H. Higgins and others, creditors of the Rosehill Cemetery Company, who held in pledge 937 shares of the capital stock of said corporation, being the same stock owned by the members of said syndicate, the entire number of shares of said stock issued by said corporation being 1500. At the time the said suit was commenced the testator of appellants was not a shareholder in said corporation. He, however, in 1885 became a stockholder and became a member of the syndicate, and in 1895 signed the syndicate agreement, except he refused to become a party to that part of the agreement which provided Killian V. R. Lansingh should be compensated for his services rendered said syndicate under said syndicate agreement. A number of stockholders intervened in said suit, and David S. Dempster is referred to as an intervenor in the said proceedings throughout that record although no intervening petition appears in the record, and in the final decree, which was

reviewed by this court in *Higgins* v. *Lansingh,* and in two other decrees entered in that case, the court found who were the owners of said 937 shares of the capital stock of said corporation, and in each instance that David S. Dempster was the owner of 50 shares of said capital stock. The court also found that Killian V. R. Lansingh, Clancey J. Dempster and Robert F. Pettibone, or their assignors, were the owners of the shares of stock now held by them and which for many years have stood upon the stock books of said corporation in their names, respectively, and when the case of *Higgins* v. *Lansingh* was in the Appellate Court and in this court David S. Dempster was an appellee, and cross-errors were assigned in his name and a ruling was obtained in that case whereby he obtained 50 shares of stock of the Rosehill Cemetery Company free and clear of the claims of the corporation or of the creditors of the corporation, and by virtue of the decree entered in the *Higgins-Lansingh case,* David S. Dempster, the testator of the appellants, voted, by his proxy, said 50 shares of the capital stock of said corporation for a new board of managers of said corporation, held in pursuance of the order entered in *Higgins* v. *Lansingh.* The same orders and decrees which settled and determined the rights of David S. Dempster to his stock as a stockholder in the Rosehill Cemetery Company also settled and determined the rights of Killian V. R. Lansingh, Clancey J. Dempster and Robert F. Pettibone, or their assignors, to their stock, respectively.

The case of *Hopkins* v. *Kean* was a creditors' bill filed in the circuit court of Cook county against Samuel A. Kean, seeking to reach his interest in the 108 shares of the 321 shares of the Preston-Kean stock which was alleged to be held by Horton for the benefit of Kean, in which suit one Osborne intervened, claiming to have a lien on said stock, and in which a cross-bill was filed by David S. Dempster and others to establish a lien for the *pro rata* share of the expense incurred by that stock in the litigation there-

tofore carried on between the syndicate stockholders and the creditors of the Rosehill Cemetery Company. A lien was established upon the stock in favor of Osborne and in favor of the syndicate stockholders, so far as they had made advances in the Higgins-Lansingh litigation for the protection of said stock, and the stock was ordered sold, and was sold, to pay said claims. In the decree entered in that case David S. Dempster and all the other syndicate stockholders were perpetually enjoined from asserting any claim to said stock.

The records in *Higgins* v. *Lansingh* and *Hopkins* v. *Kean* having been attached as exhibits to the bill filed in this case, if there is a discrepancy between the averments of the bill and those records the records will control. *Allen* v. *Woodruff,* 96 Ill. 11; *Benneson* v. *Savage,* 130 id. 352.

The contention of the appellants is, that the proceedings in *Higgins* v. *Lansingh* and *Hopkins* v. *Kean* were not adverse to the interests of David S. Dempster, and that therefore the decrees entered in those cases are not decisive in this case of the question of the ownership of said 455 shares of the capital stock of the Rosehill Cemetery Company, and in support of that proposition they rely upon the cases of *Conwell* v. *Thompson,* 50 Ill. 329, and *Gouwens* v. *Gouwens,* 222 id. 223. The rule in this State undoubtedly is that the only parties concluded by a decree in chancery are adversary parties, and that the matters determined, in order to bind them, must be an issue between them. The question therefore is, were the interests of the syndicate stockholders in the *Higgins-Lansingh* and *Hopkins-Kean cases* adverse to each other?

The primary object of the litigation in *Higgins* v. *Lansingh* was to determine whether the debt for which the 937 shares of stock of the Rosehill Cemetery Company had been pledged was paid, or if not paid, whether the complainant and other syndicate stockholders had the right to redeem said stock. The secondary question in that case

was, if the debt had been paid or the stockholders had the right to redeem said stock, who the stockholders were, as it was contended the scrip held by the syndicate stockholders was void and the stock of said corporation had been over-issued. While, perhaps, it is true, as to the primary question, the interests of the stockholders who owned said 937 shares of stock were not adverse to each other, still, as to the question who owned the stock, after it was determined that the debt for which the stock was pledged had been paid or that the stockholders had the right to redeem from the pledgee of the stock, we think the interests of said syndicate stockholders were adverse to each other. In that state of the record the case at bar would then be similar to the case of the foreclosure of a mortgage where there was a surplus to be divided between lienholders who had proved their liens in the foreclosure suit with the view of participating in the surplus.

In the *Gouwens case* the court held, where parties defendant to a foreclosure suit set up their claims by answer and make proof thereof, that up to the time it appears there is a surplus with which to pay said lienholders there is nothing to be litigated between said lienholders, and that the proceeding is not, up to that time, an adversary proceeding as between co-defendants seeking to establish their liens, but so soon as there is a surplus to be divided between said lienholders the proceeding becomes an adversary proceeding between said lienholders; and by analogy, so soon as it was held that the debt for which said 937 shares of stock had been pledged had been paid or that the owners of the stock had the right to redeem from said pledgee, it became necessary to determine who were the owners of said 937 shares of stock, and then the parties who were claiming to be the owners of said stock became adversary parties upon that question, and when the court determined who the owners were, that determination became binding upon the stockholders and each of them, and the decree

settling that question became *res judicata* upon that question. Under the general prayer of the bill in *Higgins* v. *Lansingh* the court could have ordered the stock sold, and if, after the satisfaction of the lien, if any, against the stock there had remained a surplus, divided the surplus among the owners of said stock, in which event the determination of who were the owners of said stock would have been binding upon the stockholders and could have been pleaded in any suit wherein that question had again arisen for determination between the parties. We think it can make no difference whether the court determined who were the owners of the stock for the purpose of distributing the stock or whether the determination was made for the purpose of dividing the proceeds of the stock, or, as here, where the determination was made for the purpose of determining to whom said stock should be issued and who should have the right to vote said stock. In *Harmon* v. *Auditor of Public Accounts,* 123 Ill. 122, it was said (p. 129) : "It makes no difference that the railroad company and the town were both defendants. * * * 'In chancery suits, where parties are often made defendants because they will not join as plaintiffs, who are yet necessary parties, it has long been settled that adverse interests as between co-defendants may be passed upon and decided, and, if the parties have had a hearing and an opportunity of asserting their .rights, they are concluded by the decree as far as it affects rights presented to the court and passed upon by its decree.'—*Corcoran* v. *Chesapeake and Ohio Canal Co.* 94 U. S. 741; *Louis* v. *Brown Township,* 109 id. 162; *Scotland County* v. *Hill,* 112 id. 183."

The *Higgins-Lansingh case* was commenced by Killian V. R. Lansingh as administrator, and later David S. Dempster became a stockholder of the syndicate stock, and before .the litigation was ended Killian V. R. Lansingh, Clancey J. Dempster and Robert F. Pettibone became holders of syndicate stock, and thereafter, as intervenors or otherwise,

they were all before the court, and the court in that case determined the ownership of the stock while David S. Dempster and the three parties referred to were holders of syndicate stock, and they each availed themselves of that decree and stock certificates for their stock were issued to them, respectively.

It is not always necessary before an adjudication will be available against a party as an estoppel, that it must appear the cause of action in the former case is identical with the cause of action in which the estoppel is pleaded, but when some specific fact or claim has been adjudicated and determined in a former suit, and the same fact or question is again put in issue in a subsequent suit between the same parties, the determination in the former suit, if properly presented and relied upon, will be held conclusive upon the parties in the latter suit as to that question, without regard to whether the cause of action in each case is the same. This sort of an estoppel is designated as an estoppel by verdict. *Hanna* v. *Read,* 102 Ill. 596; *Potter* v. *Clapp,* 203 id. 592; *In re Estate of Stahl,* 227 id. 529.

Our conclusion is, that the testator of the appellants, and the appellants, as well as the appellees, are bound by the adjudication of the ownership of said stock in *Higgins* v. *Lansingh* and *Hopkins* v. *Kean,* and that the decrees entered in those cases settled the ownership of the 455 shares of stock, the ownership of which is sought to be re-litigated in this case.

The Appellate Court held,—and we agree with that holding,—that the bill of the testator of the appellants showed no equity upon its face so far as it attempted to recover, for the benefit of David S. Dempster, a portion of the stock of the Rosehill Cemetery Company now held by the personal representatives of Killian V. R. Lansingh or the personal representatives of Clancey J. Dempster, or by Robert F. Pettibone in person, as said bill does not show that David S. Dempster had any interest in said stock.

David S. Dempster was not a holder of syndicate stock at the time the syndicate was formed, and he never held more than 50 shares of the stock of said corporation. At the time he purchased his stock it had but little or no value, and it was made valuable by the efforts of Killian V. R. Lansingh, for which service David S. Dempster paid him nothing. It therefore seems obvious that David S. Dempster had no ground for complaint that some of the other members of the syndicate divided their stock with Killian V. R. Lansingh in payment of his services, or that Clancey J. Dempster or Robert F. Pettibone acquired the title to syndicate stock in which David S. Dempster was in no way interested. It also appears that after Killian V. R. Lansingh, Clancey J. Dempster and Robert F. Pettibone acquired their stock they were recognized as stockholders in said corporation, and received dividends on their stock, without question by David S. Dempster or any other stockholder of the said corporation, from 1896 to 1902, during which time David S. Dempster was receiving dividends on his stock, and it is clear that during all those years David S. Dempster did not claim he had any interest in said syndicate stock held by other persons, especially by Killian V. R. Lansingh, Clancey J. Dempster and Robert F. Pettibone.

We are of the opinion that the circuit court properly sustained a demurrer to so much of the bill as sought to question the ownership of the 455 shares of stock now held by the personal representatives of Killian V. R. Lansingh, the personal representatives of Clancey J. Dempster and Robert F. Pettibone in person, and as the appellants declined to further proceed with the litigation after the demurrer to that portion of the bill had been sustained, the court properly dismissed the bill.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*