(No. 19000.—

DAVID J. GERAGHTY, Appellee, *vs.* PETER J. GERAGHTY, Appellant.

*Opinion filed June 19, 1929.*

GUSTAVE NEUBERG, and STEPHEN F. RIORDAN, for appellant.

COCHRANE & GEORGE, for appellee.

Mr. JUSTICE DIETZ delivered the opinion of the court:

This is an appeal from a decree of the superior court of Cook county against Peter J. Geraghty, the appellant and the defendant below, in favor of David J. Geraghty, the appellee and the complainant below, in accordance with the prayer of his bill, and finding him to be the equitable owner of certain real estate in the city of Chicago the legal title of which was held by the defendant. The grounds urged for reversal are that the court admitted improper evidence and that the evidence is insufficient to sustain the decree.

The complainant and the defendant are brothers and had dealt with each other for years. The complainant was at one time an ironworker and employed in the construction of buildings. He was injured by a fall in 1906. After that time he was unable to follow his regular trade and was engaged in building-alterations and repairs for himself and others, including the defendant, who was a priest and the owner of considerable property. The complainant asserts that the title to the real estate in question was placed in the name of the defendant, at the defendant's suggestion, for the protection of the complainant and in order that it could be transferred without the signature of his wife, with whom he was having trouble. The defendant maintains that it was purchased by him as an investment and in order to furnish to the complainant a means of employment. The property consists of a lot improved by a two-flat building at 3817 North Marshfield avenue. Prior to August 1, 1917, it was owned by Elmer A. Kimball, a lawyer, with offices in the Unity building. Shortly after the middle of July the complainant met Kimball and opened negotiations for its purchase. The price asked was $3200, to be paid $1000 in cash, $1500 by the assumption of a first mortgage and $700 by the giving of a second mortgage. Several days later the complainant called these negotiations to the attention of the defendant. They inspected the property together and agreed that it was a good purchase. The complainant testified that on the 25th or 26th of July following, he went to the office of Kimball and closed the deal, paying to Kimball $100 as earnest money. The defendant testified that about that time the deal was closed by him and that he made the initial payment of $100. On the day the transaction was consummated they met at the home of the complainant and took a street car for Kimball's office. When they reached Diversey boulevard the defendant left the car and went to his parish house near by, where he says he procured from his desk about $900 in currency. The

complainant continued on his way. He testified that he went to the banking house of the Hibernian Banking Association, where he had a savings account, and withdrew therefrom $1000 in ten $100 bills. In this he is corroborated by the records of the bank showing the withdrawal. Later in the day they met at Kimball's office, where the sum of $914 was paid on account of the purchase price and a deed conveying the real estate to the defendant was delivered to the complainant, by whom it was later recorded and afterwards retained. At the same time the defendant executed the second mortgage for $700, payable in monthly installments of principal and interest.

The complainant testified that he paid the item of $914 from the proceeds of his withdrawal and that the deal was closed on August 4. The defendant testified that it was paid by him from the currency obtained from his desk and that the transaction took place on August 1. The true date is of importance, because the records of the bank show that complainant's withdrawal of $1000 was made on August 4. The deed and the second mortgage are both dated on August 1 but each was acknowledged on August 4. It is not likely that these instruments were delivered before they were acknowledged. Furthermore, as will appear later, the book entries of Kimball show that August 4 was the date the payment was made. The conclusion is irresistible that August 4 and not August 1 was the date of the transaction. Kimball died before the time of the trial, but his son was a witness. He was present at the time the deal was closed. His testimony is that the transaction took place on August 4 and that the $914 was paid by the complainant. He also said that his father received from the complainant the initial payment of $100. He produced the books of his father, by which he was corroborated. It is admitted that the complainant went into immediate possession of the real estate and that he collected the rents and paid the taxes until the bill was filed, on July 10, 1924.

By his own labor, and otherwise, he improved the property to the extent of $3500, thereby doubling its rental income. This is not denied. The defendant paid on the $700 mortgage the first three installments, for which he was reimbursed by the complainant, who also paid all of the remaining installments. In 1922 the defendant executed a renewal of the first mortgage, but the interest on it and the renewal expense were paid by the complainant. Some time before the bill was filed, the complainant, through a broker by the name of Heim, received an offer to purchase the property for $7800. Heim telephoned to the defendant and requested him to execute a deed, but was told by the defendant that he would not do so because the complainant did not need the money. Shortly thereafter the complainant made the same request, to which he testified the defendant replied, "What do you want the money for?" The defendant admits that he refused to execute a deed, but testified that he told both Heim and the complainant that the reason he refused was because the complainant was not the owner.

The defendant offered in evidence, in support of his claim that the initial payment of $100 was paid by him, a check stub dated July 26, 1917, indicating on that day a check for $100 had been issued to Elmer A. Kimball. Upon this stub was the notation, "For deposit on 3817 North Marshfield avenue." The entries on this stub were all in pencil and in the handwriting of the defendant. He testified that a check corresponding to this stub was issued and delivered to Kimball, and that the check was written in ink and contained the same notation, but that it was lost. The master found the initial payment was made by the defendant but he had been reimbursed therefor by the complainant at the time the deal was closed. There is no basis for either finding. It is not even claimed by the complainant that he re-paid this item to the defendant. His testimony is that the initial payment was made by him. Furthermore, the

book entry in the handwriting of Kimball shows that this sum was paid to him on July 25. The check stub was dated July 26, and if the check corresponded to the stub it was also dated July 26. It is not claimed by the defendant that the payment was made by him on July 25, because he testified that it was made by him on July 26. It is not probable that the entry was made before the payment was received. From all of the evidence we are forced to conclude that the initial payment was not made by the defendant.

The court admitted in evidence on behalf of the complainant the first and third pages of a three-page letter written to him by the defendant on October 4, 1918, which contains the following: "In your letter you expressed the intention of selling out. I will buy Marshfield avenue from you now, if you want to sell." It is contended by the defendant that this was error. The second page of the letter was lost. It is admitted by the defendant that the entire letter was in his handwriting and that the pages admitted were genuine. He had full opportunity to explain the contents of the missing page had he so desired. Under these circumstances the two pages were properly admitted. *Greer* v. *Andrew,* 138 Ga. 663.

In connection with the argument of the defendant that the evidence is insufficient to support the decree, the point is raised that in the bill of complaint and in the testimony of the complainant an express trust was claimed. It is admitted that the bill also alleges sufficient facts to establish either a constructive or a resulting trust. While neither an express nor a resulting trust can be created by parol agreement the intention of the parties may be shown thereby, and the existence of such parol agreement will not prevent a resulting trust if it is otherwise established by clear and convincing evidence. (*Furber* v. *Page,* 143 Ill. 622; *Mercury Club* v. *Keillen,* 323 id. 24; *John* v. *John,* 322 id. 236.) It is well settled that a resulting trust arises where

the purchase price of real estate is paid by one person and the title thereto is conveyed to another. (*Brennaman* v. *Schell,* 212 Ill. 356; *Mercury Club* v. *Keillen, supra; O'Donnell* v. *O'Donnell,* 303 Ill. 31.) Such payment must be shown unequivocally and unmistakably by clear and convincing evidence so as to lead to but one conclusion. (*Brooks* v. *Gretz,* 323 Ill. 161; *Briscoe* v. *Price,* 275 id. 63; *Winkelman* v. *Winkelman,* 307 id. 249.) That the purchase price here was paid by the complainant was so shown by that degree of evidence is sustained by this record. That the initial payment was made by him is established by the testimony of a disinterested witness and corroborated by the book entry made at the time. That it was not paid by the defendant is clear from the fact that it was paid one day in advance of the date of the check upon which he relies. That the final payment was also paid by the complainant is borne out by the testimony of a disinterested witness. It is also corroborated by the further book entry and the records of the bank showing the withdrawal.

The claim of the defendant that he is the owner of the real estate in question and that he paid the purchase price thereof is without corroboration. It is not only overcome by direct evidence which is clear and convincing, but it is wholly inconsistent with the possession, control and use thereof by the complainant from the beginning, his improvements and repairs made thereon, and his payment of the taxes, together with the interest and principal of the mortgages given as a part of the purchase price.

The decree of the superior court is affirmed.

*Decree affirmed.*