(No. 22248.—

GARY M. BAKER, Appellant, *vs.* ALINE LEMIRE *et al.* Appellees.

*Opinion filed February 23, 1934—Rehearing denied April 10, 1934.*

NEIL H. THOMPSON, for appellant.

CONRAD SCHUL, for appellees.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The appellant (hereinafter referred to as the complainant) filed his amended bill against Aline LeMire (hereinafter referred to as the defendant) and her present husband, R. E. LeMire, alleging that certain real estate in Mt. Vernon was owned by the complainant and the defendant in equal parts. The amended bill further charged that while the title to such real estate stood in the name of the defendant, yet an undivided one-half interest in such real estate was held by her in trust for the benefit of the complainant. The amended bill prayed that the title to an undivided one-half interest in the real estate be established in the complainant, that partition of the real estate be made, that the defendant account for the rents and profits alleged to have been received by her, and that her share in such real estate be impressed with a lien in favor of the complainant for whatever amount might be found due him on such accounting. The defendant filed her answer denying that the complainant was entitled to an accounting and alleged that he had no interest in the real estate. The cause was referred to a special master, who took the evidence and found the issues against the complainant. From the decree of the circuit court confirming the special master's report and dismissing the bill for want of equity this appeal is prosecuted by the complainant.

It is the contention of the complainant that he furnished a portion of the purchase money with which the real estate in question was purchased; that the title to the real estate was taken at her request in the name of the defendant, who was the then wife of the complainant, with the verbal understanding that they should own the real estate equally, and that thereby a trust was created in the complainant's favor for a one-half interest in the

premises. The defendant admits the title to the property was taken in her name, but denies that there was ever any agreement that the complainant was to have any title or interest in the premises or that the title thereto was taken in her name through any request that she made of the complainant.

It appears that the parties were married on March 4, 1922, and lived together until September, 1927, when the wife left the husband. At the January term, 1928, of the Jefferson county circuit court, she obtained a divorce on the ground of cruelty. No alimony was prayed for in the bill for divorce and the decree is silent on the subject of property rights and alimony. No children were born of the marriage. The defendant married R. E. LeMire on May 9, 1929. At the time of the marriage between the complainant and the defendant the former had no property. The defendant had from $800 to $1000, either in money or chattel property, which chattels were shortly after marriage converted into money. She delivered to the complainant, soon after the marriage, either $300 or $400 in cash, he claiming the sum was $300 and she claiming it was $400, which money was deposited by the complainant in a savings account in the name of the defendant in a Mt. Vernon bank. The parties lived very frugally during their marriage relation. The complainant deposited the savings from his salary in this savings account. With the proceeds of the savings account and including other money contributed by the defendant a tract of city property was purchased. To make the full payment some money was borrowed of a Mt. Vernon bank on a note. The record does not disclose whether one or both of the parties signed the note, but the property so purchased was conveyed directly to the defendant. During the marriage relation the defendant for a short time did outside work, earning about $25 or $30, which went into the fund used for the purchase of property. After the first piece of property was

purchased other city lots were bought, the title being taken in the name of the defendant. These lots were improved by the construction of a number of dwellings thereon, and some of the properties were sold on contract for deed to different persons. The contracts for the construction of the buildings were made in the name of the complainant. Material and labor bills were paid by him. He did some work in supervising the construction of the dwellings. The evidence shows that the defendant was present during a great portion of the time during the construction of the buildings, supervising the work of such construction. The payments on the property sold were usually made by check payable to the defendant, most of which checks were endorsed by the complainant in his own name and deposited in his account in different banks in Mt. Vernon. He carried a separate account, against which the defendant wrote checks for household expenses. At the time of the separation the defendant owed approximately $6400. In addition to that amount there was a note for $300 signed by the complainant due one of the banks in Mt. Vernon. The indebtedness owing by the defendant represented money which she had borrowed and which she had put into the different properties, excepting about $400 which she owed to materialmen and contractors for labor and materials used in the construction of some of the dwellings.

The complainant states that he thought that he and the defendant were to share the property equally but does not claim any such agreement was had or made at the time of the purchase of any of the property. The defendant claims that no such understanding was ever arrived at between the complainant and herself. The complainant testified that after the separation he met the defendant in Belleville, on which occasion he was served with summons in the divorce suit; that they there talked over the matter of the property, and that in the discussion she told him she was not going to do anything about the division

of the property but was going to leave it as it was. He testified that after the divorce was obtained he saw his wife in Chicago; that at that time he was attending school, where he was educating himself as an optometrist; that he and the defendant talked together, and that she told him that after he had finished his schooling she would consider re-marriage with him. She denied that she ever told him that she would consent to re-marriage with him and denied that she made the statements at Belleville attributed to her by him. She testified that a few days after the separation the complainant came to the house where she was then staying and that they had a conversation there; that on that occasion he told her that the property was hers; that he wanted her to take it, live off it and pay the debts and notes; that he would take care of himself; that she would have enough to pay the debts, and that she agreed with him that she would do that and that she would not ask for any alimony. The parties had a model-T Ford car, bought second hand in 1924 for $360. She testified that on this same occasion the complainant said he wanted the automobile, and it was agreed that it should be his property; that on a later occasion, after she had procured her divorce, she saw the complainant in Chicago, and he then told her, in substance, that he had no use for the car, and that she agreed to pay him $100 for it. She testified, and is not contradicted in that respect, that at that time the car was not worth more than $50 but that she later paid him $100 for it. The complainant claims that the $100 represented the one-half interest which he said he owned in the car. He had some household goods which he had obtained from his mother after the marriage. During the course of their married life the defendant sold these. After the separation she sent the complainant her check for $128, which she testified was in payment of the household goods, and also $50 for two rugs, and that the price she paid for the household goods was a very

liberal price. After the divorce she went to Florida. She testified that she there received a letter from the complainant in which he told her, in substance, that the property was all hers and for her to pay the debts and do what she pleased with the property and that he could make his own way.

The father of the defendant testified to a conversation that he had with the complainant a few days after the separation in which the complainant stated that he was going to give the defendant everything that they owned— the real estate and the personal property—all but the automobile, because he wanted that; that the property was in the name of the defendant and that it was hers; that she could keep it and pay the debts. The complainant does not deny the conversation that he had with the father, neither does he deny that he made the arrangement with the defendant a few days after the separation in which it was agreed that she would not ask for alimony and that he released all claims to the real estate. Neither does he deny writing the letter above mentioned. No demand or request was ever made by him upon the defendant for division of the real estate or for the conveyance of any interest therein to him until after her marriage to LeMire. The evidence showed that she has paid the $300 note signed by her husband to the Mt. Vernon bank, that she has paid a portion of the other debts, and that he had contributed nothing towards her support since the divorce.

Where there is an express trust there can be no resulting trust. (*Kingsbury* v. *Burnside,* 58 Ill. 310.) There is no evidence in this case tending to establish an express trust. If there was any trust created for the complainant it was a resulting trust. The burden of proof is upon the party seeking to establish a resulting trust. (*Hummel* v. *Villmow,* 347 Ill. 58.) In order to establish a resulting trust in real estate the evidence must be clear, strong, unequivocal, unmistakable, satisfactory, and so convincing as

to lead to but one conclusion, (*Strong* v. *Messinger*, 148 Ill. 431; *Katzing* v. *Wiegand*, 286 id. 646; *Lord* v. *Reed*, 254 id. 350; *Brooks* v. *Gretz*, 323 id. 161;) and if the facts are doubtful or are capable of reasonable explanation upon any theory other than the existence of such a trust it is not sufficient to establish a trust. (*Kinsch* v. *Kinsch*, 348 Ill. 446.) A resulting trust does not arise from or depend upon any agreement between the parties, but it must arise at the time of the transaction and with the passing of the title. (*John* v. *John*, 322 Ill. 236; *Brooks* v. *Gretz, supra; Stelling* v. *Stelling*, 323 Ill. 122.) Where a husband purchases real estate with his money and takes the title in his wife's name the presumption is that it was intended as a gift or an advancement, and unless this presumption is overcome the husband can claim no resulting trust by the mere proof of the payment of the purchase money. (*Partridge* v. *Berliner*, 325 Ill. 253; *Schultz* v. *Schultz*, 274 id. 341; *Scott* v. *Cornell*, 295 id. 508; *Fry* v. *Morrison*, 159 id. 244; *Maxwell* v. *Maxwell*, 109 id. 588.) The undisputed evidence in the case shows that far more of the money of the defendant than of the complainant went into the several properties. Moreover, the weight of the proof establishes that if he ever had any interest in the property he waived such interest in consideration of the defendant paying the obligations owing upon the property, one of which was the individual note of the complainant and which note was paid by the defendant. Tested by the rules applicable to resulting trusts or constructive trusts, the complainant has failed to establish a trust in his favor in the property.

Some complaint is made by the complainant of the rulings of the trial court upon the admission and exclusion of evidence. We find no reversible error in such rulings.

The decree of the trial court was correct and is affirmed.

*Decree affirmed.*