(No. 27907.—)
RUSSELL A. JONES, Appellee, *vs.* GUSTAV CHARLES KOEPKE *et al.*—(ETHEL A. ANDREFF *et al.*, Appellants.)

*Opinion filed May 16, 1944.*

ROBERT F. KOLB, of Chicago, for appellants.

HARRY A. BIOSSAT, of Chicago, for appellee.

Mr. CHIEF JUSTICE SMITH delivered the opinion of the court:

This in an appeal by the defendants from a decree of the superior court of Cook county. The decree was en-

tered on the complaint of appellee, Russell A. Jones. By the complaint he alleged that on January 29, 1940, he entered into a written contract with Gustav Charles Koepke, whereby Koepke agreed to convey by warranty deed the property described in the complaint, to Jones, upon his making the payments provided in the contract. He further alleged that he went into possession of the premises under the contract; that his father, appellant George W. Jones, acted as his agent in collecting the rents and continued to reside on the premises as appellee's agent. He further alleged that substantially all of the payments under the contract were made from rentals received from the property by his father, George W. Jones; that when the payments were all made, the property was, by direction of George W. Jones, conveyed by Koepke to appellant Ethel A. Andreff; that appellant Andreff was the divorced wife of George W. Jones.

Upon the facts alleged in the complaint, it is contended that a resulting trust arose; that appellee was the lawful owner of the property and that his father had no interest therein. The prayer of the complaint was that the court, by its decree, establish the trust and decree that Ethel A. Andreff holds title to the property, in trust, for appellee, and order a conveyance made by her to appellee. An answer was filed denying the material allegations of the complaint. The cause was referred and the evidence was taken before a master. The master made his report recommending a decree in accordance with the prayer of the complaint. The court overruled exceptions to the master's report and entered a decree, as prayed.

The evidence shows that appellee was a practicing physician in the city of Chicago; that his father, George W. Jones, was on relief, at least during a part of the time involved. The further facts disclosed by the record show that on January 29, 1940, Gustav Charles Koepke and George W. Jones entered into a written contract for the sale

of the property. By the contract Koepke agreed to convey the premises to George W. Jones upon the latter making the payments as provided in the contract. The contract provided for a cash payment of $200 at the time the contract was executed. The purchase price was $1200, the balance of which was to be paid in monthly installments of $50 each. It is conceded that these payments have all been made. The contract was drawn by an attorney representing Koepke. It was executed in duplicate. One copy was retained by Koepke's attorney and the other copy delivered to George W. Jones. The contract was signed by Koepke and George W. Jones. It was signed and delivered in the presence of the attorney. Appellee was not present nor was he a party to the contract, as executed. His name nowhere appeared in the contract. He did not sign it.

Appellee testified that he furnished the money for the initial cash payment on the contract. He testified that in order to make the down payment on the contract he borrowed $400 from a loan bank. He first testified that he gave the $400 to his father about January 30, 1940, all at one time. Later, when confronted with the note which he gave to the loan bank, and which he identified as the note evidencing the loan testified to by him, he admitted that he borrowed only $300; that the note for the principal and interest was $324.12 and that this loan was not made to him until February 9, 1940. He then testified that he paid the money to his father in installments of $50 over a period of six weeks following the time the money was borrowed; that he paid the first $50 to his father the "last of February or March." His father testified that the $200 down payment was made by him with his own money. The father was corroborated in this by the attorney who drew the contract and closed the transaction. He testified that the $200 payment was made by George W. Jones in

his office at the time the contract was signed and that the endorsement of the credit of $200 was made on the contract by Koepke at that time, in his presence. This was on January 29, 1940, eleven days before appellee borrowed the money at the bank.

It is not disputed that George W. Jones paid appellee's note to the loan bank. No part of it was paid by appellee. The father testified that the $300 borrowed by appellee from the loan bank was given to him from time to time subsequent to February 9, 1940, and that these moneys were used for the purchase of materials used in repairing the building on the premises. Appellee also testified that he advanced $10 on a contract for electrical work in the building and that he signed the contract for such work. He does not claim that he paid anything on this contract, except the $10, which the father testified he repaid to appellee. This was denied by appellee. The father testified that he paid for all material and labor used in repairing the building. Other than the $10 advanced on the contract for electrical work, appellee does not claim that he made any payments on account of the repairs.

It is agreed that the father repaired the premises which consisted of four apartments; that the repairs were completed and the premises rented in a comparatively short time after the contract was entered into; that he thereafter received, as rentals, $150 per month. There is no controversy between the parties that the father made all the payments under the contract to Koepke. The only claim of appellee is that the payments were made by his father out of the rentals. The father testified that he applied the rentals to the repair of the premises and payments under the contract; that for these purposes he spent altogether for repairs, some $2900 in addition to making the payments under the contract. Other than the $10 advanced by appellee on the electrical repairs, appellee does not con-

tend that he furnished any of the funds for the repairs, except the $300 borrowed by him from the loan bank which, he admits, his father afterwards repaid.

Some confusion was injected into the case by the conduct of the father and son long after the contract was entered into. On October 17, 1940, a suit was filed in the superior court of Cook county against the city of Chicago to enjoin the city from collecting delinquent water bills incurred by the prior owner of the property. The same attorney who prepared the contract between Koepke and George W. Jones, prepared the complaint and appeared for the plaintiff in this suit against the city of Chicago. The record shows that for some reason it was decided that the suit should be filed in the name of appellee. Appellee was named as plaintiff in the suit. His father, George W. Jones, was not joined as a plaintiff. A photostat copy of the complaint is in the record. This copy shows that both the complaint and the affidavit thereto were signed by Russell A. Jones on October 17, 1940. The complaint was sworn to before an attorney associated in the office of the attorney who filed the suit, and which attorney assisted in the preparation of the complaint. He testified that appellee signed the complaint and the affidavit thereto attached, which was executed before him as a notary public. The complaint was filed and a temporary restraining order was issued on the sworn complaint. The two attorneys and appellee all testified that on the day the case was heard on the merits, appellee appeared at the office of the attorneys. The copy of the contract between Koepke and George W. Jones, which was in the latter's possession, was altered throughout by erasing the name of George W. Jones and inserting in lieu thereof the name of Russell A. Jones. Russell A. Jones signed this copy of the contract at that time. According to the record this was on December 17, 1940. No alterations or additions were made in

or to the copy of the contract held by Koepke. That copy was never signed by appellee.

On the hearing on the merits of the injunction suit, appellee testified in support of the complaint. He testified that he signed the contract and bought the property on the terms specified therein and that he was the owner of the property. George W. Jones, the father, also testified in that suit. It is asserted repeatedly in appellee's brief, that the father testified that Russell A. Jones was the purchaser under the contract and owned the property. These statements, however, are not supported by any evidence in the record. As abstracted, the testimony of one of the attorneys for the plaintiff in that suit indicates that George W. Jones testified in that case that his son owned the property. A reference to the record, however, does not justify this statement. The record shows that this attorney did not testify that George W. Jones testified in the injunction suit that his son owned the property. His testimony is that he did not recall what George W. Jones testified in the injunction case. The other attorney testified that he could not recall what either George W. Jones or Russell A. Jones testified to on the hearing in the injunction suit. Appellee testified, with reference to his father's testimony in the injunction suit, that he did not hear his father testify in that suit. It is undisputed that George W. Jones paid the attorney's fee in that case. This reference to the testimony in the injunction suit is necessary for the reason that appellee now claims that the decree in that case constitutes an adjudication or estoppel as against George W. Jones, and that he cannot, in this case, deny that his son was the owner of the property. This contention will be referred to later in this opinion.

The theory of appellee, advanced in this court, is not in accordance with the allegations in his complaint. In his complaint he alleged positively and definitely that he en-

tered into the written contract with Koepke on January 29, 1940. His entire case, as stated in the complaint, is based on this allegation. His theory in this court is that he furnished the money for the purchase of the property and, therefore, a resulting trust arose under which he should be held to be the owner of the property. He makes no claim on this appeal that he was a party to the contract or that his name appeared therein or thereon until the one copy of the contract was altered in December, 1940. Neither theory has any support whatever in the evidence.

It is settled by complete unanimity of decisions that parol evidence to establish a resulting trust must be clear, strong, unequivocal and unmistakable, and must establish the fact of the payment of the purchase money, by the alleged beneficiary, beyond doubt. (*Dodge* v. *Thomas,* 266 Ill. 76.) It is equally well settled that where the evidence is doubtful and not entirely clear or satisfactory, or is capable of reasonable explanation upon any theory other than that of the existence of an implied or resulting trust, such trust will not be held sufficiently established to entitle the beneficiary to a decree declaring and enforcing it. (*Stephens* v. *St. Louis Union Trust Co.* 260 Ill. 364.) The rule is also settled that the evidence to rebut the presumption of a resulting trust is not required to be as strong as that required to show the payment of the purchase money. *Lord* v. *Reed,* 254 Ill. 350.

The contention of appellee that a resulting trust arose in this case is based solely on his own testimony. His testimony is not only not corroborated by facts or circumstances in evidence, but is contradicted by the positive testimony of his father and, in its material parts, by the testimony of the two attorneys who appeared in the injunction suit. Appellee does not claim that he was present at the time the contract was signed. George W. Jones and the attorney who drew the contract both testified that he was not. They also testified that the $200 down payment was

made on the contract at the time it was executed by George W. Jones and Koepke in the attorney's office. Appellee does not even claim that he furnished any of the purchase money until sometime after the contract was signed. The $200 down payment is conclusively shown to have been made by George W. Jones and credited on the contract long before appellee borrowed the money which he later turned over to his father. He admits that all the money borrowed by him was repaid to the loan bank by his father. It is true he claims he advanced $10 in connection with the electrical work in the building which, he testified, was not repaid to him. His father testified that it was.

There are many other things in the record to discredit appellee's testimony. The record shows that during a part of the time covered by the transactions here involved, the father was on relief. It further shows that during that time an investigation was being made by a case worker for the Old Age Division of the Department of Public Welfare, relating to George W. Jones. Appellee was interviewed by an investigator. The particular point involved was to determine whether George W. Jones was the owner of an interest in any property. This was in September, 1942. He admits that he concealed from this investigator at that time the fact that his father was a party to the contract for the purchase of the property. To put it in its mildest form, it is not improbable that appellee brought about the changes and alterations in the contract and had the suit against the city of Chicago brought in his own name for the purpose of concealing the fact that his father was a party to the contract, under which he might claim an interest in this property. It was clearly a scheme by which the fact that his father was a party to the contract was to be suppressed. The result was that a fraud was perpetrated on the superior court in the injunction suit by the changes made in the contract, the averments in the complaint and the testimony of appellee in that cause, as to

the ownership of the property, under the contract, without disclosing the true facts to the court. That his father was a willing party to the fraud did not alter its purpose.

Appellee argues that the decree entered in the injunction suit constitutes an adjudication of the issue as to the ownership of the property between appellee and his father, or in any event, that the father is estopped by that decree from now claiming the property. There are several answers to this proposition, any one of which is conclusive. The decree in that case was not pleaded by appellee in this case, in his complaint or in any other pleading filed. In suits in equity a former decree to be available as a defense must be pleaded. (*People* v. *Oakridge Cemetery Corp.* 328 Ill. 53; *Williams* v. *Williams,* 265 Ill. 64.) Appellee did not, in his complaint in this case, or in any other pleading, set up or even refer to the decree in the injunction suit. All the evidence concerning that decree was, therefore, wholly inadmissible and could not be properly considered. It is also true that appellee and George W. Jones were not adversary parties in the injunction suit. The rule is that parties on the same side of litigation are not bound by a judgment or decree in subsequent controversies between them respecting their rights, unless they have formed or contested an issue respecting the same and the judgment or decree has determined such right. The only parties concluded by a decree are adversary parties and the matter determined must be made an issue between them, either by the pleadings or in fact. If no issue between co-parties in a chancery suit is presented and adjudicated, the decree is not evidence in favor of either party against the other. *Renfro* v. *Hanon,* 297 Ill. 353; *Dempster* v. *Lansingh,* 244 Ill. 402; *Gouwens* v. *Gouwens,* 222 Ill. 223.

The decree in the injunction suit cannot be invoked as an estoppel. The rule in respect to the conclusiveness of a verdict or judgment and former trial between the same parties, when the judgment is used in pleading as a tech-

nical estoppel, or is relied on by way of evidence as conclusive *per se,* is, that it must appear by the record of the prior suit that the particular controversy sought to be construed was necessarily tried and determined. (*Hoffman* v. *Hoffman,* 330 Ill. 413.) No one can contend, upon the record in this case, that the question of the ownership of the property, as between appellee and his father, was in any way an issue in the former case. There is, therefore, no basis on which appellee can rely upon the decree in the injunction suit, as an adjudication, or as an estoppel, against his father in this case, even if said decree was not tainted with fraud, as already indicated.

We are not unmindful of the rule that weight should be given to the findings of a master on controverted questions of fact where the witnesses have testified orally before him. His finding, however, on such questions, and the weight to be given to such finding, depend upon the record in each particular case. This court has never adopted the rule that the master's report is to be given the same effect as the verdict of a jury in a case where the parties have the right to have the issues of fact determined by a jury. In a chancery case the facts are found by the court and the master's report, while *prima facie* correct, is of an advisory nature only. The facts are all open for consideration, in the first instance, by the trial court and afterwards by this court, in case of an appeal. Without regard to the finding of the master upon any particular question of fact, the ultimate and final question in this court is, Was the decree rendered by the court a proper one under the law and the evidence? (*Kelly* v. *Fahrney,* 242 Ill. 240; *Henderson* v. *Harness,* 184 Ill. 520; *Fairbury Union Agricultural Board* v. *Holly,* 169 Ill. 9.) It is only where the court has heard the evidence that we have refused to disturb the finding unless it was clearly and manifestly against the weight of the evidence. *Larson* v. *Glos,* 235 Ill. 584.

A reference to some of the findings of the master on which the decree of the court below was based, in connection with the evidence, is sufficient to demonstrate that the master's report is entitled to little or no weight. By finding No. 5 the master found that George W. Jones signed the contract with Koepke on behalf of appellee, "but inadvertently signed his own name to it." There is not only not a word of evidence in the record on which to base this finding, but the appellee, either in his testimony or in his complaint, did not so contend. Also, in paragraph 11, the master found that in the injunction suit, George W. Jones testified that appellee was the contract purchaser of the premises. This finding is equally without foundation. As already pointed out there is no evidence on which to base this finding. Other specific findings of the master are unsupported by the evidence, and are equally subject to condemnation. When the evidence in this record is considered, the findings of the master are entitled to no weight.

The burden was on appellee to prove, by clear and convincing evidence, facts from which a resulting trust would arise. To meet this burden he is compelled to rely solely upon his own testimony. His testimony is not only uncorroborated, but is disputed by his own admissions, by the testimony of disinterested witnesses and by facts, and circumstances appearing in the evidence. He has signally failed in every respect to meet the burden imposed upon him to establish a trust.

The court below erred in entering the decree in favor of appellee. That decree is reversed and the cause is remanded to the superior court of Cook county, with directions to enter a decree dismissing the complaint for want of equity.

*Reversed and remanded, with directions.*