(No. 30448.

BERTHA TUNTLAND *vs.* MELAIE HAUGEN *et al.*, Appellants. —(BERTHA TUNTLAND *et al.*, Appellees.)

*Opinion filed March 18, 1948.*

LOWELL B. SMITH, of Sycamore, and T. W. ANDERSON, of Earlville, for appellants.

GEORGE SPITZ, and HARRIS D. FISK, both of De Kalb, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

A decree of the circuit court of DeKalb County ordered partition of a parcel of real estate among Bertha, Amos, Thomas T. and Ray Tuntland and Melaie Haugen. The three last named prosecute this appeal, a freehold being necessarily involved.

Thomas J. Tuntland died intestate on February 6, 1936, leaving as his heirs-at-law his wife, Ellen, then seventy-four years of age, and their six children, Bertha, Amos, Ray, Thomas T. and John Tuntland, and Melaie Haugen. Tuntland owned a farm of eighty acres in DeKalb County and, upon his death, his wife, Ellen, became the owner of an undivided one-third interest and the six children an undivided one-ninth each. An instrument captioned, "Stipulation and Assignment," executed on March 24, 1936, by the six brothers and sisters states that their father, Thomas J. Tuntland, died seized and possessed of the farm, live stock, grain, farm implements, household furniture and effects, and other farm chattels; that he had $1225.32 on deposit in a local bank; that the estate owed an estimated $750 for funeral expenses, medical and nursing services; that Tuntland's heirs-at-law desired to settle the estate without probate proceedings, and that John Tuntland desired to sell and assign to his brothers and sisters all of his interest and distributive share in the assets of the estate of his father and his prospective interest and distributive share in the assets of any estate his mother might have or leave at the time of her decease. The instrument recites that John Tuntland sells and assigns the interests described to his brothers and sisters and acknowl-

edges receipt of $1350 from them as payment in full. The brothers and sisters, in turn, agreed to pay all debts and obligations, including funeral expenses, medical bills and any other obligations of the estate of Thomas J. Tuntland, deceased; to care for, maintain, board and clothe their mother and furnish her proper medical attention during her lifetime, without any contribution from John Tuntland. The agreement concludes, "It is further agreed that no Letters of Administration shall be issued on the estate of said Thomas J. Tuntland, deceased, this agreement being a family settlement of the estate of Thomas J. Tuntland, deceased, and the prospective estate of Ellen Tuntland at the time of her decease."

On the same day, namely, March 24, 1936, John Tuntland, by a quitclaim deed, conveyed his one-ninth interest in the farm to his brothers and sisters. Amos Tuntland and Melaie Haugen furnished and paid the entire consideration of ·$1350 and, of this sum, Amos Tuntland paid $1050 and his sister $300. If so, Tuntland acquired seven-ninths of his brother's one-ninth interest and Melaie Haugen two-ninths, and they then owned 16/81 and 11/81 interests, respectively.

By a quitclaim deed, dated April 8, 1936, Ellen Tuntland conveyed to Amos and Bertha Tuntland the farm of eighty acres. The line preceding the signature of the grantor reads: "Dated this 8th day of ~~March~~ April A.D. 1936." This deed was acknowledged and caused to be placed of record on April 8, 1936. If a valid conveyance, Amos and Bertha Tuntland each acquired one half of the one-third interest of their mother, namely, a one-sixth interest each in the eighty acres. Giving effect to the transactions described, Amos Tuntland became the owner of an undivided 59/162 interest in the farm; Bertha Tuntland, 45/162; Melaie Haugen, 22/162, and Thomas and Ray Tuntland, 18/162 each.

An undated agreement executed by Ellen Tuntland and

all of her children, excepting John Tuntland, so far as relevant, states that they desired Ellen Tuntland to be appointed as their agent to manage the estate of T. J. Tuntland, to collect all rents and moneys due, and to pay all debts and claims against the estate; to pay all just bills; to attend to the upkeep of the farm and, if necessary, to borrow short-time loans in the management of the estate. "It is further agreed," the instrument adds, "that Amos Tuntland and Bertha Tuntland shall be given all personal property now on the farm and that our Mother Ellen Tuntland shall have the income from this farm during her life. This agreement is made for the present year to March 1st 1937 and may be changed or carried on after that date as we may then agree."

Ellen Tuntland died on March 9, 1944. Thereafter, on November 10, 1944, the plaintiff, Bertha Tuntland, filed her complaint and, later, an amendment to the complaint, in the circuit court of DeKalb County against the defendants, Melaie Haugen, Thomas T., Ray and Amos Tuntland, seeking partition of the property upon the basis previously described. By his answer, Amos Tuntland admitted the allegations of plaintiff's amended complaint. Melaie Haugen, Thomas T. and Ray Tuntland answered and filed a cross complaint alleging that it was agreed among themselves, plaintiff and Amos Tuntland, that title to the undivided one-ninth interest of John Tuntland should be taken in the name of his five brothers and sisters and, upon payment of the proportionate share of the cost, each should be seized of an undivided one-fifth interest of his undivided one-ninth interest; that Amos Tuntland advanced the purchase price and that only Melaie Haugen paid to him her share of $300, and that Amos Tuntland became seized of an undivided 4/45· interest and Melaie Haugen an undivided 1/45 interest by virtue of the purchase from their brother. If so, Amos Tuntland then owned 9/45, Melaie Haugen 6/65, and Thomas T., Ray,

and Bertha Tuntland 5/45 each, and Ellen Tuntland, 15/45. Counterclaimants allege, further, that on April 8, 1936, it was orally agreed among Melaie Haugen, Thomas T., Ray, Amos and Bertha Tuntland, as owners of six-ninths interest, and their mother, as owner of three-ninths interest, that the latter should receive the life use of all the real estate; that, in consideration, Ellen Tuntland conveyed her undivided three-ninths interest to Amos and Bertha Tuntland for the use not only of themselves, the two grantees, but, also, of Thomas and Ray Tuntland and Melaie Haugen, and that, since April 8, 1936, to the date of the death of Ellen Tuntland, she collected all the rents and income from the property for her own use and benefit, in accordance with the terms of the agreement, so that, by reason of the deed, each of the five children acquired an undivided 3/45 interest of the property previously owned by their mother. Proceeding upon this basis, counterclaimants sought a partition of the premises among the parties according to their respective rights and interests alleged to be, as follows: Amos Tuntland, 12/45; Melaie Haugen, 9/45, and Thomas, Ray and Bertha Tuntland, 8/45 each. An accounting from Amos and Bertha Tuntland of the rents collected from March 9, 1944, was asked. Evidence was heard by the chancellor and, on February 10, 1947, a decree was entered fixing and determining the respective interests of the parties in the property, as alleged in the amendment to plaintiff's complaint, namely, Bertha Tuntland 45/162; Amos Tuntland 59/162; Melaie Haugen 22/162; Thomas Tuntland 18/162, and Ray Tuntland 18/162. Counterclaimants' motion to set aside the decree and to grant a rehearing was overruled. This appeal is prosecuted from the order of July 28, 1947, denying their motion.

The evidence adduced discloses that because of the unfriendly attitude generally of John Tuntland, a family settlement was made shortly after the death of Thomas J.

Tuntland. . A meeting was held on March 24, 1936, at the law office of Al Clapsaddle (now deceased), in Leland, the seven members of the family and Elizabeth Burkhardt, employed by attorney Clapsaddle and who later became his sister-in-law, being present. The "Stipulation and Assignment" was executed in Clapsaddle's office. John Tuntland was represented by his own counsel. The testimony of the three counterclaimants and Elizabeth Burkhardt Clapsaddle is to the effect that the undated agreement was prepared immediately after the family settlement with John Tuntland was consummated and signed by counterclaimants on March 24, 1936, and, later, by Amos and Bertha Tuntland after they had consulted another attorney. Ray Tuntland testified that he also signed the undated agreement on March 24, immediately after the settlement with his brother John was completed and that his sister, Melaie Haugen, and his brother, Thomas, signed on the same day; that Amos Tuntland stated he desired time to examine the instrument, and that he did not recall what his sister, Bertha, said. According to Ray Tuntland, their attorney, Al Clapsaddle, brought up the matter of John Tuntland's interest, saying that something had to be done with it or he could come in for a share again after their mother's death and that a deed should be made out to one or more of the children in order to keep John from acquiring a second share; that he, the witness, suggested the deed be made to Amos Tuntland; that Clapsaddle stated he would proceed to prepare the deed, and that it was the attorney who suggested "that mother would have the life use of it and we were to have the interest of her farm and her estate." Melaie Haugen testified that the deed conveying her mother's interest in the farm was made to Bertha and Amos Tuntland because they were unmarried; that all the children discussed the proposition of their mother having the life use of the property and that they agreed their mother's property should be divided

equally among the five children. Thomas Tuntland testi-
fied that Clapsaddle "explained to us this here deed, why
it should be written up and drawn that mother should
have the entire income off of her real estate and also my
father's and we therefore thought it was made out that we
were to share equally in mother's estate and also the per-
sonal property at her death." Elizabeth Burkhardt Clap-
saddle testified all the children, in conversation regarding
a division of Ellen Tuntland's property, stated that they
were willing their mother should deed her interest in the
farm to Amos and Bertha Tuntland and that each of the
five children was to hold an equal interest in the eighty
acres. The witness testified that she presumed she pre-
pared the deed from Ellen Tuntland to Amos and Bertha
Tuntland on March 25, 1936. Amos and Bertha Tuntland
denied the remarks attributed to themselves. The former
testified that, at the meeting on March 24, an agreement
was entered into whereby Ellen Tuntland should receive
the income from the farm for her lifetime but it was not
agreed that the interests in her estate and T. J. Tuntland's
estate should go equally among the five children. Bertha
Tuntland testified that no agreement was made whereby
Amos Tuntland was to take the title to the property for
his brothers and sisters. She also testified that Clapsaddle's
personal secretary was not present during any part of the
time the members of the family were discussing their affairs
and that she was, instead, in another room occupied with
typewriting. Amos Tuntland, it appears, operated the farm
and both he and Bertha Tuntland resided on the farm with
their mother until her death.

The present controversy, for all practical purposes,
concerns three-fifths of Ellen Tuntland's interest or, in
other words, a 9/45 interest in the farm. Stated differ-
ently, the dispute concerns disposition of sixteen acres.
Seeking a reversal of the decree, the appellants, Melaie
Haugen, Thomas T. and Ray Tuntland, contend that, by

the deed from Ellen Tuntland conveying her one-third interest in the property to the appellees, Amos and Bertha Tuntland, the grantees took title for the use and benefit of the five parties named and, conversely, that the deed was not a gift of their mother's interest to appellees. To sustain their contention, they argue that a resulting trust arose by operation of law the moment Ellen Tuntland agreed to convey her interest to the five children, and, for convenience, had the title taken in the names of Amos and Bertha Tuntland.

A resulting trust does not depend on contract or agreement but is founded on a presumed intent which arises out of the acts of the parties. (*Kane* v. *Johnson*, 397 Ill. 112; *Cook* v. *Blazis*, 365 Ill. 625; *Kinsch* v. *Kinsch*, 348 Ill. 446; *Cohn* v. *Siegel*, 334 Ill. 30.) Created by implication and operation of law, a resulting trust need not, of course, be evidenced by writing. (*Murray* v. *Behrendt, ante,* p. 22; Ill. Rev. Stat. 1947, chap. 59, par. 9.) Further, while a resulting trust cannot be created by parol agreement, the existence of an oral contract will not prevent a resulting trust if it is otherwise established by clear and convincing evidence. (*Geraghty* v. *Geraghty*, 335 Ill. 494; *Mercury Club* v. *Keillen*, 323 Ill. 24; *John* v. *John*, 322 Ill. 236.) In its most common application, a resulting trust arises from the fact that one person furnishes the consideration for the purchase of land while the conveyance is taken in the name of another. (*Houdek* v. *Ehrenberger*, 397 Ill. 62; *Frasier* v. *Finlay*, 375 Ill. 78.) The trust arises, if at all, in the same transaction in which the legal title passes, at the time the title vests, on consideration advanced before or at that time and not on acts arising thereafter. (*Murray* v. *Behrendt*, 399 Ill. 22; *Brod* v. *Brod*, 390 Ill. 312.) The burden of proof rests on the parties seeking to establish a resulting trust and the evidence must be clear, strong, unequivocal, unmistakable, and so convincing as to lead to but one conclusion. (*Hou-*

*dek* v. *Ehrenberger,* 397 Ill. 62; *Heineman* v. *Hermann,* 385 Ill. 191; *Banning* v. *Patterson,* 363 Ill. 464; *Wiley* v. *Dunn,* 358 Ill. 97.) If a reasonable explanation of the evidence adduced may be made upon any theory other than the existence of a resulting trust, the evidence is insufficient to support a decree declaring and enforcing a trust. *Jones* v. *Koepke,* 387 Ill. 97; *Nickoloff* v. *Nickoloff,* 384 Ill. 377; *Cook* v. *Blazis,* 365 Ill. 625; *Baker* v. *LeMire,* 355 Ill. 626.

Appellants assert that the undated agreement was entered into on March 24, 1936, the same day the agreement with John Tuntland was made, and that the consideration for payment of the entire income from the farm to Ellen Tuntland during her lifetime was that each of the five children was to share equally in her estate and that she accepted the life income on this basis. An examination of the record discloses that the grantor, Ellen Tuntland, neither expressly nor impliedly agreed to any plan for conveying her interest in the farm to the five children. The substance of the testimony of appellants and Elizabeth Burkhardt Clapsaddle is that, on March 24, 1936, "everybody agreed" to the plan they assert was orally agreed to by the six interested members of the family. Admittedly, the deed was not executed on March 24. The attorney's secretary testified that she prepared the deed the next day and the evidence discloses that, on April 8, Clapsaddle obtained the signature of the grantor to the deed and, as recounted, the deed was recorded the same day.

Appellants, nevertheless, insist that the evidence discloses beyond any doubt the intention of all the persons present at the meeting in the attorney's office to place title to the one-third interest of their mother in Amos and Bertha Tuntland for the benefit of the five children. Observations relative to omissions tend to support appellees, who maintain that no trust could have been planned by the parties and that it was not their intention a trust

should result from the execution of a deed on either March 24, the date of the meeting in the attorney's office, or on April 8, the day it was delivered. Had a trust been intended, as they point out, it would have been a simple matter for the attorney to have made reference to a trust in the agreement. No trust agreement definitely determining the ownership, as asserted by appellants, was prepared. Appellants say that it was the purpose of the quitclaim deed to place the title of their mother in such a manner that John Tuntland would not receive any part of her interest upon her death. If their contention is correct, the purpose sought to be accomplished would have been defeated in the event either of the grantees predeceased their mother. The grantees in the quitclaim deed were not made joint tenants, and the death of either Amos or Bertha Tuntland would have immediately vested a portion of the title to the property in John Tuntland.

No express trust is disclosed by the evidence. The conveyance of April 8, 1936, was not a deed in trust and no trust indenture exists among the children. The alleged oral agreement of March 24, 1936, purporting to create an express trust is without legal effect if for no other reason than the application of the Statute of Frands. To establish a resulting trust, appellants rely on the undated agreement of the parties giving their mother a life estate in the farm, subject to further agreement between them after March 1, 1937, and the asserted intention that Amos and Bertha should take a conveyance of their mother's interest for the benefit of all of them, as evidenced by the disputed conversation of March 24, 1936. The evidence adduced by appellants to support their theory of a resulting trust is not so clear, strong, unmistakable, satisfactory and convincing as to lead to the single conclusion that a resulting trust in real estate was established. On the contrary, the facts are capable of reasonable explanation upon other theories than the existence of a resulting trust. Here, the

evidence clearly shows that, over a long period of years, Amos and Bertha Tuntland remained at home with their mother and father and, after the latter's death, continued to reside on the farm homestead, managing the farm and taking care of their aged mother. Their action in this regard may well have induced their mother to deed the property to them and to have constituted the actual consideration for the conveyance. Appellants failed to sustain the burden of proof devolving upon them as the parties asserting the existence of a resulting trust.

The decree of the circuit court is right, and it is affirmed.

*Decree affirmed.*